TERMINIX INTERNATIONAL, INC.,
and Sears Roebuck &
Company, Appellants,

v.

Marie LUCCI, Appellee.

No. 04–81–00352–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 18, 1984.

Rehearing Denied March 16, 1984.

Writ filed April 13, 1984.

Randall B. Richards, Hollon & Marion, Boerne, for appellants.

Tuck R. Chapin, San Antonio, for appellee.

Before ESQUIVEL, CANTU and REEVES, JJ.

OPINION

REEVES, Justice.

This is an appeal from a Deceptive Trade Practices Act case. Appellee was granted judgment for the recovery of the reasonable cost of repair as well as the permanent reduction of the market value of her home, treble damages, and attorney's fees due to the breach of a termite control and guarantee contract entered into with appellants.

Appellee, Marie Lucci, early in 1976, discovered termite infestation in her home. Appellants, Sears Roebuck & Company, acting through TERMINIX INTERNATIONAL, INC., on February 26, 1976, entered into a termite control and guarantee contract with appellee. The home was satisfactorily treated and the termite infestation abated. The termite control and guarantee contract was for a period of one year with a right of renewal. The contract provided in part:

> Sears further agrees that if new subterranean termite damage to the structure or contents occurs while this contract is in effect, then Sears will, upon notifica-

tion and inspection, arrange for necessary repairs at its expense. New subterranean termite damage is that damage done by termites over and above existing damage at the time this contract was originally entered into (as indicated on the attached form), with live termites being found in the damaged area.

Appellee renewed and extended the contract. Sometime around September of 1978, appellee's son discovered active termites in the upstairs bathroom. Appellants were notified a short time thereafter. There was a sharp dispute between the parties as to the extent of the new termite damage and the cost of its repair. Negotiations deteriorated and this lawsuit was instituted by appellee.

The appellee alleged that appellants breached their contract and the guarantees and warranties flowing therefrom resulting in a violation of the Texas Deceptive Trade Practices Act.

The jury found for the appellee, and the court ruled that the actual damages found by the jury be trebled pursuant to TEX. BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon Supp.1982–1983) and that appellee recover her attorney's fees.

## SPECIAL ISSUES AND DAMAGES

Appellants contend the trial court erred in submitting special issue number fourteen, inquiring what sum of money would compensate appellee for "the permanent reduction, if any, in the market value of her home, resulting from new subterranean termite damage," because such issue submitted an improper measure of damages. The issue, in pertinent part, provides:

> What sum of money, if any, paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Marie Lucci for her damages, if any, which you find from a preponderance of the evidence resulted from new subterranean termite damage to her home after March 1, 1976?

Answer separately in dollar and cents with respect to each of the following elements:

(a) reasonable and necessary cost of repairs

Do not include any expenditures heretofore made by Marie Lucci for repairs to her home or the value, if any, of the time spent by her in making such repairs.

We, the jury, answer: $6,415.00

(b) permanent reduction, if any, in the market value of her home

We, the jury, answer: $20,000.00

(c) reasonable and necessary expenditures, if any, made by Marie Lucci for repairs to her home.

We, the jury, answer: $50.00

Appellants objected to the submission of special issue number fourteen for the following reasons:

(a) No legally sufficient evidence of the reasonable and necessary cost of repairs for new subterranean damage;

(b) That portion of special issue fourteen that inquired as to whether there was a permanent reduction, if any, of market value of the plaintiff's home for reason there is no legally sufficient evidence of probative force that any permanent reduction of market value, if any, is causally related to new subterranean termite damage in the plaintiff's home.

(c) The inquiry as to permanent reduction in market value as a proper measure of damages for defects or repairs, which can be remedied without impairment to the building as a whole, is the reasonable cost of repair. No legally sufficient evidence by a qualified witness that appellee's home was structurally impaired so as to require any other measure of damages based upon any permanent reduction of market value.

(d) No legally sufficient evidence of the reasonable and necessary expenditures made by appellee for necessary repair of the new subterranean termite damage.

In considering points of error connected with the submission of special issue number fourteen, we are limited to the objections and exceptions aforementioned. *American Transfer & Storage Co. v. Reichley,* 560 S.W.2d 196, 199–200 (Tex. Civ.App.—Amarillo 1977, writ ref'd n.r.e.).

We will first consider appellants' assertion that the proper measure of damages was a reasonable cost of repair. TEX. BUS. & COM.CODE ANN. § 17.50(b) (Vernon Supp.1982–1983) (Deceptive Trade Practices Act) establishes actual damages as the basic measure of damages to an aggrieved and successful consumer. In determining actual damages, appellants concede that the courts have approved both market value or the reasonable cost of repair. *Jordan Ford, Inc. v. Alsbury,* 625 S.W.2d 1 (Tex.Civ.App.—San Antonio 1981, no writ); *Jim Walter Homes, Inc. v. Castillo,* 616 S.W.2d 630 (Tex.Civ.App.—Corpus Christi 1981, no writ); *Fidelity & Deposit Co. of Maryland v. Stool,* 607 S.W.2d 17 (Tex.Civ.App.—Tyler 1980, no writ). Consequently, if there was legal and sufficient evidence to warrant the submission of market value the court did not err in submitting it.

■ Appellants contend that the contract between the parties provided the method of ascertaining damages in the event of a controversy between the parties and this contractual method should have been used by the trial court. This contention was not brought forth in the exceptions made to the submission of special issue number fourteen, nor was a requested instruction submitted to the court on this method of computing damages. It was, therefore, waived. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535 (Tex.1981).

Appellants also complain of the submission of the permanent reduction, if any, in the market value of appellee's home, because any award of damages made pursuant to that measure of damages, in addition to a recovery of damages for reasonable and necessary costs of repairs represents a double recovery of the actual damages sustained by the appellee.

■ TEX.R.CIV.P. 274 requires that:
A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. Any complaint as to an instruction, issue, definition or explanatory instruction, on account of any defect, omission or fault in pleading, shall be deemed waived unless specifically included in the objections.

In appellants' exceptions to special issue number fourteen, they failed to call to the court's attention their complaint of "double damages." It is true that appellants, in objecting and excepting to the submission of special issue number fifteen, concerning attorney's fees, did object "on the basis of recovery of damages under special issue number fifteen, which constitutes double recovery of actual damages sustained by plaintiff, if any." The exception made as to special issue fifteen did not notify the court of appellants' complaint of "double damages" in special issue number fourteen. *Brazos Electric Power Co-op, Inc. v. Taylor,* 576 S.W.2d 117, 119 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). Moreover, appellants failed to request the court to submit a special instruction calculated to prevent the jury from allowing a double recovery. *Green v. Baldree,* 497 S.W.2d 342, 350 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ). We are of the opinion that any error the trial court might have committed by the submission of special issue number fourteen relating to double recovery was waived.

■ Moreover, assuming the alleged error was called to the attention of the court, we do not agree that the issue permitted a double recovery. The theory of appellants' case was based on the premise that on or about March 1, 1976, her home could not reasonably be placed in the market in its state of disrepair. After repairing the house, the price of the home would still be affected by the stigma or bad reputation of a home that had been seriously damaged by termites. An affirmative answer to the

issue dealing solely with the cost to repair the *termite* damage which occurred after March 1, 1976, would not make appellee whole. *See* e.g., RESTATEMENT (SECOND) OF TORTS § 928 (1979), which states:

When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for

(a) the difference between the value of the chattel before the harm and the value after the harm or, at his election in an appropriate case, the reasonable cost of repair or restoration, with due allowance for any difference between the original value and the value after repairs. . . .

*Id.* Therefore, the issue inquiring as to the permanent reduction in market value was proper. A trial judge must be given discretion in the submission of special issues. The obvious purpose of the special issue is to clearly set forth the disputed facts to be decided by the jury. *See* G. Hodges, SPECIAL ISSUE SUBMISSION IN TEXAS 1 (1959). While it might have been preferable to submit the customary before and after market value issues with appropriate instructions, the issue, as framed, is not such that calls for reversal. A measure of damages that is not correct in every respect, if substantially correct, is not reversible error. *Crisp v. Security National Insurance Co.,* 369 S.W.2d 326, 330 (Tex. 1963); *McMahan v. Musgrave,* 229 S.W.2d 894 (Tex.Civ.App.—Eastland 1950, writ dism'd).

Further, assuming error, the inclusion of permanent market value would be harmless since, if proven, would do no more than compensate appellee's damages to the realty; the primary object of the suit. *Frymire Engineering Co. v. Grantham,* 517 S.W.2d 820 (Tex.Civ.App.—Fort Worth 1975), *reversed and remanded on other grounds,* 524 S.W.2d 680 (Tex.1975).

### SUFFICIENCY OF THE EVIDENCE

Appellants urge that the evidence was legally and factually insufficient to support the following findings of the jury to special issue number fourteen:

(a) Reasonable and necessary cost of repairs in the sum of $6,415.00.

(b) Permanent reduction in the market value of the home in the sum of $20,000.00.

(c) Reasonable and necessary expenditures paid by appellee for repairs to her home in the sum of $50.00.

In considering the no evidence or, as it is sometimes called, legal insufficiency points, the appellate courts will consider only the evidence tending to support the finding, viewing it in the most favorable light in support of the finding, giving effect to all reasonable inferences that may be properly drawn therefrom, and disregarding all contrary or conflicting evidence. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). In reviewing the insufficient evidence points we must consider and weigh all the evidence, including any evidence contrary to the trial court's judgment. *Burnett v. Motyka,* 610 S.W.2d 735 (Tex.1980).

### A. *Reasonable Cost of Repairs.*

During the latter part of 1978 or the first part of 1979, appellee obtained a bid from a contractor (Lucas) for the repair of termite damage done to her home. Lucas, who testified at the trial, submitted an estimate for repair in the amount of $4,850.00. His bid was introduced into evidence and he testified that he had found termite damage to the ceiling of the home, and although the hallway of appellee's residence showed no apparent termite damage, he could feel depressions in the walls which he surmised were caused by the termites as they progressed from the first floor to the second. His inspection of the bathroom upstairs disclosed some structural damage to the floor close to the commode which he partially attributed to water. He further testified that the water damage could have been caused by the termite damage in the ceiling joints or the decking below the commode. This damage could have caused the toilet to drop or move which, in turn, could

have caused the water damage. He opined that since the water damage was not serious, the water leak was of short duration and had not caused substantial damage. He found termite damage on the surface of the paneling behind the toilet base. Photographs of the interior of the house were introduced into evidence showing termite damage to the interior of the house, which pictures were taken subsequent to the time of Lucas' original inspection and consequent bid. He testified that the termite damage shown by the pictures taken subsequent to his original inspection showed much more extensive damage and therefore, it would cost more to repair than his original estimate of $4,850.00.

Appellants contend that the bid submitted by Lucas was to repair all of the termite damage to appellee's home, including damage which existed prior to their original contract for which appellants could not be responsible. By the very nature of appellants' business, there had to be some prior termite damage or there probably would have been no necessity for the parties to enter the original contract, or the subsequent extensions of the contract. The original damage done by the termites, which occurred prior to the original contract, could not have been ascertained without tearing out the walls of the house. This, of course, would be impractical. There was also testimony by appellee that extensive termite damage had occurred subsequent to the original contract and while the subsequent extensions of the contract were in force.

## B. *Reduction of Market Value.*

In support of appellee's contention that the permanent market value of her home was reduced by the termite damage, she called upon the testimony of two witnesses. Both of these witnesses had inspected the home in the company of appellee and had the benefit of that inspection of the premises as well as information of the continuing damages that had occurred subsequent to the original discovery of the termites in early 1976, which led to the original contract with appellants. They also had for their consideration estimates of repair and current pictures of the damaged area to aid them in their opinion testimony. Robert E. Hartong, Jr., a real estate broker of seven-and-a-half years' experience, having heard that appellee might want to sell her home, requested permission to inspect the home. He declared that he found substantial termite damage in the entry hall, the stairway landing, the family room, the bathroom and the master bedroom. He opined that the home was not marketable in its present condition unless sold at a considerable discount to an investor in the business of buying and selling homes. His opinion was that, assuming the termite damage was repaired, the market value of the home would be reduced by $11,000.00 to $15,-000.00 due to the stigma or reputation of that home due to the substantial termite damage. Hartong explained that a realtor was obligated to inform prospective buyers of latent defects such as structural termite damage regardless of the length of time between the repair of the damage and the time of its subsequent sale, and that the buying public had a fear and reluctance to purchase a home that had been substantially damaged by termites, even though the damage had been repaired. Appellee's other witness testifying as to the permanent market value generally concurred with Hartong, that substantial termite damage affected the marketability of a home.

Both sides called expert witnesses to testify to the marketability of a home that has been damaged by termites. The testimony, of course, was conflicting, but there was substantial evidence that, although a house had been treated for termites and the damage repaired, the house's value in the market place could suffer a reduction. The rationale of the testimony dealt with the difficulty of ascertaining the extent of the termite damage, the tendency of termites to revive and return to their scene of harm and the general bad reputation of termites to survive and eat more. The testimony of the experts called by appellee was that the market value had been affected adversely as a result of the termite damage.

Appellants correctly point out that appellee's home had termites at the time of the original contract; consequently, the termite stigma had already attached to the house through no fault of their own. But the new and extended damage could certainly worsen the already bad reputation of the house and was compensable. It is noted that the court limited the issue on market value to new subterranean termite damage after March 1, 1976.

The uncertainty as to the amount of recovery will not defeat a recovery. "A party who breaks his contract cannot escape liability because it is impossible to state or prove a perfect measure of damages." *Southwest Battery Corp. v. Owen,* 131 Tex. 423, 115 S.W.2d 1097, 1099 (1938). The exact extent of the damages, although undeterminable, will not preclude recovery if the injured party has produced the best evidence available and that evidence is sufficient to afford a reasonable basis for estimating the loss. *Hindman v. Texas Lime Co.,* 157 Tex. 592, 305 S.W.2d 947 (1957). We hold that the evidence was sufficient to support the award of damages for both the permanent reduction in market value and the reasonable cost of repair.

C. *Expenditures for Repair.*

During the time appellee and appellants were unsuccessfully negotiating the extent of the new termite damage to the home, appellee and one of her sons performed some stop-gap or remedial repairs of the termite damage. She made no attempt to recover for the time she and her son worked, but she did testify that she expended $50.00 for supplies used for the repairs. These bills, over objection to appellee's competence to testify that the cost of the materials were reasonable and necessary for the repair of the damage, were introduced into evidence. After some contradictory testimony, she testified that she did know the reasonable cost of these items and that the costs were reasonable and necessary to correct some of the damage to her home. We are of the opinion that the court did not err in permitting the testimo-

ny, and that it was sufficient to support a jury award.

## JURY MISCONDUCT

We must now consider the disparity of the jury's conclusion that the reasonable cost of the repair was $6,415.00 when Lucas, the contractor, testified the reasonable cost of repair of the termite damage was $4,850.00 in December 1978 or early 1979. The appellee attributes the disparity to the testimony of Lucas, who, upon looking at photographs of the termite damage taken about two years after his bid testified that the condition had worsened since his original bid and due to inflation, the cost of repairs had increased. Lucas stated some of the items needing repair had doubled in price in the two year interval, and that the cost of repairs at the time of trial would be from $6,000.00 to $8,000.00. Appellants contend that the increase was due to jury misconduct.

In awarding damages, the jury could consider that the price of repair had increased since the cause of action accrued, and the fact that appellee's home was still in a state of disrepair at the time of the trial. *See Armellini Express Lines of Florida, Inc. v. Ansley,* 605 S.W.2d 297, 311 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Johnston Testers v. Rangel,* 435 S.W.2d 927 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.).

Appellee's jury misconduct allegation is that the jury used a percentage factor (15%) which increased the repair damage from $4,850.00 to $6,415.00 which was impermissible as there was no evidence of the inflationary factor during the two year interval. In support thereof appellants called Irwin E. Turner, Jr., the jury foreman, and Mrs. Tommye Crab. The affidavit of one juror was also introduced. The affidavit stated that a percentage factor to be applied to the repairs was suggested by several jurors, and that a computation was made upon the percentage factor. Mr. Turner testified that an annual inflationary rate was used. In arriving at that figure, he stated the jury considered the testimony

of Lucas when he stated that he wouldn't do the job now for what he had bid then and that it would be more. The juror, Mrs. Crab, testified that the 15% figure was used. The juror also recalled that Lucas testified that he would not make the repairs for the same amount of money as when he gave the original bid.

 TEX.R.CIV.P. 327 provides for a new trial if misconduct of the jury is proven and it reasonably appears from the evidence and from the record of the trial that injury probably resulted in harm to the complaining party. A new trial on grounds of jury misconduct will only be granted when the misconduct is proven, found to be material and probably resulted in injury to the complaining party. *Gulf Coast Sailboats, Inc. v. McGuire*, 616 S.W.2d 385, (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). In arriving at the 15% figure, Mr. Turner testified that the jury discussed many things with reference to using a percentage factor for inflation. There were some jurors who wanted to use the 15% factor, and one that wanted to award a lower percentage. Through their discussions, they came to the conclusion that 15% was appropriate. Establishing a guideline or working basis for calculating the damages is not reversible error. *Landreth v. Reed*, 570 S.W.2d 486, 490–91 (Tex.Civ.App.—Texarkana 1978, no writ). We are of the opinion that there was sufficient evidence to support the jury's finding as to the reasonable costs of repair and, consequently, find no jury misconduct.

## WRITTEN NOTICE OF DTPA CLAIM

 Appellants complain that the trial court erred in trebling appellee's actual damages in that the evidence was legally and factually insufficient to show appellants received written notice of appellee's claim as mandated by TEX.BUS. & COM. CODE ANN. § 17.50A(a) (Vernon Supp. 1982–1983), and in the trial court's refusing a requested special issue inquiring as to the failure of appellee to inform appellants in writing because there was more than a scintilla of evidence to support the submis-

sion of such issue. Mr. Tuck Chapin, attorney for appellee, was the only witness who testified regarding notice. His testimony was that he had sent notice by certified mail to both appellants more than thirty (30) days prior to the filing of the lawsuit. He introduced into evidence, without objection, a copy of a letter to Sears Roebuck & Company, Pest Control Department, 6301 N.W. Loop 410, San Antonio, Texas, 78228, and Terminix International, Inc., 2527 N.E. Loop 410, San Antonio, Texas, 78217, dated February 27, 1979. Attached to the exhibit was the United States postal receipt which indicated that certified letter No. 160535 had been accepted by Sears Roebuck & Company Pest Control Department at the above address by E.H. Rhodes. There was also attached to the exhibit, the receipt for certified mail No. 160535 which is customarily left with the sender. Mr. Chapin did not introduce into evidence a signed receipt evidencing Terminix's receipt of the notice but he did introduce into evidence his sender's receipt No. 160536. The record shows the following:

> MR. RICHARDS [attorney for appellants]: So the record reflects, that is, the letter dated February 27, 1979, that is the letter that was sent to Sears?
>
> MR. CHAPIN: Sears and Terminix.

Appellees offered no evidence that they had not received the letter of demand. There is a presumption arising from the mailing of a letter that it was received. The presumption arises only after proof has been made that the letter was properly addressed to the addressee, stamped with the proper postage, and that it was mailed. *Mobile America Sales Corp. v. Gradley*, 612 S.W.2d 625, 628 (Tex.Civ.App.—Beaumont 1980, no writ). We are of the opinion that the evidence was sufficient. Appellee has conclusively established that the proper notice had been given appellants under the Deceptive Trade Practices Act which would entitle appellee to treble damages. Under the circumstances, the submission of defendants' (appellants') requested issue was not required. *Yancey v. Olvera*, 518

S.W.2d 935, 942 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.). Appellants' points of error relating to notice are overruled.

## ATTORNEY FEES AND REMITTITUR

Appellants alleged that the attorney's fees found by the jury and awarded by the trial court were excessive and not supported by the evidence introduced at trial. The award for attorney's fees was $29,100.00 for the time spent in preparation and in the actual trial in the district court, an additional $7,500.00 if the case was appealed to the Court of Appeals, and $3,500.00 more if application was made for writ of error to the Supreme Court, and an additional $1,500.00 if the writ of error was granted by the Supreme Court.

Tuck R. Chapin, attorney for appellee, testified that he kept time records to account for the number of hours he spent in the preparation and trial of this cause. A summary of the time records was introduced into evidence, and Chapin testified that, including the seven days it took to try the lawsuit, he expended approximately 290 hours of his time as an attorney. Chapin, an attorney of twenty-two years, testified that he charged $100.00 per hour which was reasonable, and that the hours he worked on the case were necessary.

■ Appellant filed a motion in the trial court for remittitur alleging, as in this appeal, that the attorney's fees were grossly excessive. The statutory authority for attorney's fees in a DTPA suit at the time this cause of action arose provided that the prevailing party may recover court costs and attorney's fees reasonable in relation to the amount of work expended. TEX. BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon 1976). Appellee, as the prevailing party, was entitled to attorney fees. *Cordrey v. Armstrong*, 553 S.W.2d 798 (Tex. Civ.App.—Beaumont 1977, no writ).

Mr. Richards, attorney for appellants, also testified as to his legal fee for representing the appellants. He testified that his fee arrangement with this particular client started at $50.00 per hour and later went to $60.00 per hour for preparation for trial, and during the actual trial he charged $650.00 per day. His explanation for charging on a per diem basis during trial was that during trial he sometimes spent as many as eighteen (18) hours a day working on a particular case, but did not feel justified in charging his client on an eighteen (18) hour day basis. Mr. Richards estimated his fee through the trial court was approximately $10,350.00.

■ Although there is a disparity as to the hourly charge, the attorneys were in accord that it took many hours to prepare and try this lawsuit. It is within the jury's province to weigh the testimony of the attorneys as to the value of their services by reference to the nature of the services rendered, the time occupied in their performance and the amount charged by other attorneys in the locality doing similar work. *Ortiz v. O.J. Beck & Sons, Inc.*, 611 S.W.2d 860, 867 (Tex.Civ.App.—Corpus Christi 1980, no writ). Our Supreme Court in *Gulf Paving Co. v. Lofstedt*, 144 Tex. 17, 188 S.W.2d 155 (1945) stated "there is great latitude in fixing attorney's fees, that several elements must be considered in determining what is a reasonable fee, as the amount involved, the actual services to be performed, the time required for trial, the situation of the parties, and the results obtained." *Id.* 188 S.W.2d at 160.

■ We hold that the evidence supports the jury's finding, and as such the award for attorney fees for the preparation and the trial of this case was not excessive.

■ We are, however, of the opinion that the award for legal services for the appeal is excessive. In determining whether an award of attorney's fees is excessive, it is the responsibility of the Court of Appeals to draw on the common knowledge of the justices of the court and their experience as lawyers and judges, taking into consideration the testimony, the record and the amount in controversy. *Wenk v. City National Bank*, 613 S.W.2d 345, 352 (Tex. Civ.App.—Tyler 1981, no writ); *Mecey v.*

*Seggern,* 596 S.W.2d 924, 930 (Tex.Civ.App. —Austin 1980, writ ref'd n.r.e.).

 We find that the portion of the judgment for attorney fees for the appeal to the Court of Appeals in the sum of $7,500.00 is excessive in the amount of $3,000.00, the award for services in the sum of $3,500.00 if application is made for writ of error to the Supreme Court of Texas is excessive in the amount of $2,000.00, and the sum for legal services in the amount of $1,500.00 if the application for writ of error is granted by the Supreme Court is excessive in the amount of $500.00.

## ADMISSION AND EXCLUSION OF TESTIMONY

Appellants contend error by the trial court in sustaining appellees' objection to the testimony of Gerald W. Wiley, a contractor called as an expert witness in construction, as to the cost of repairs to appellee's home as of February 1981. A search of the record fails to reveal where appellants perfected their bill of exceptions as to the excluded testimony.

> Error is not shown in the exclusion of evidence unless the appellant brings before the appellate court a record that shows clearly not only what the evidence would have been if admitted, but also its relevancy; and where an appellant excepts to a court's ruling excluding testimony of a witness, but does not go further and develop by bill of exceptions what the witness's answer and testimony would have been, no error on the part of the trial court is demonstrated.

*Swinney v. Winters,* 532 S.W.2d 396, 402 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.).

 Appellants also contend error by the trial court in permitting, over objection, the testimony of Don McCormick. Appellants objected to any offer of an opinion by Mr. McCormick as to value of the appellee's home for the reason that he had not shown the necessary expertise. The objection was overruled and Mr. McCormick was permitted to testify. He testified that he would consider buying the Lucci home for

$60,000.00 to $70,000.00. Assuming, arguendo, that the evidence was erroneously admitted, the testimony was merely cumulative, substantially the same as other testimony already introduced, and was not so grievous as to cause the rendering of an improper verdict of this cause. *Delhi Gas Pipeline Co. v. Mangum,* 507 S.W.2d 631, 636 (Tex.Civ.App.—Tyler 1974, no writ); *Medina Electric Cooperative, Inc. v. Ball,* 368 S.W.2d 227 (Tex.Civ.App.—San Antonio 1963, no writ).

Appellants' points of error relating to the admissions and exclusions of testimony are overruled.

That portion of the trial court's judgment awarding appellee reduction of permanent market value, reasonable cost of repair, expenditures for repair, and treble damages on the same is affirmed; the portion of the judgment awarding attorney's fees is reformed as follows: attorney fees for the appeal to the Court of Appeals in the sum of $7,500.00 is reduced by the sum of $3,000.00, the award for services in the sum of $3,500.00 if application is made for writ of error to the Supreme Court of Texas is reduced by $2,000.00, and the sum for legal services in the amount of $1,500.00 if the application for writ of error is granted by the Supreme Court is reduced by $500.00. As reformed, the judgment of the trial court is affirmed.