(865 P.2d 1044)
No. 69,228

STEVEN W. HORSCH and JANE E. HORSCH, *Appellees,* v. THE TERMINIX INTERNATIONAL COMPANY, LIMITED PARTNERSHIP, *Appellant.*

Petition for review denied 254 Kan. 1007 (1994).

Opinion filed December 23, 1993.

*Thomas J. Lasater* and *Mary E. May*, of Fleeson, Gooing, Coulson & Kitch, of Wichita, for appellant.

*Robert T. Cornwell*, of Law Offices of Robert T. Cornwell, of Wichita, for appellees.

Before GERNON, P.J., BRAZIL and LEWIS, JJ.

BRAZIL, J.: The Terminix International Company (Terminix) appeals from a jury verdict awarding damages to Steven W. Horsch and Jane E. Horsch for Terminix's negligence in a termite inspection. Terminix also claims the trial court erred in awarding attorney fees and related costs to the Horsches. We affirm.

The Horsches entered into a contract for the purchase of a farmhouse, outbuildings, personal property, and five acres of land. The purchase price was $50,000. The purchase contract required a termite inspection certificate be furnished to the Horsches.

Three days before the contract was entered into, an inspector for Terminix inspected the house for termites and termite damage and saw no visible evidence of termite infestation or termites. He prepared a report indicating no wood-destroying insects were observed, and the Horsches relied on that report in purchasing the house.

Approximately three months later, the Horsches discovered what they believed to be termite damage and contacted Terminix. Terminix's branch manager reinspected the farmhouse and observed visible termite damage. He admitted that the damage should have been observed in the initial inspection and made an offer to replace the visibly damaged boards in the crawl space. Terminix's regional technical specialist later inspected the farmhouse and also found termite damage that should have been included in the report. Additional termite damage was subse-

quently discovered in the bathroom, in the roof, and underneath a first floor window.

At trial, the Horsches' witness, a contractor, testified the cost of repair of the known termite damage was $5,045. Bill Suhm, a real estate broker, testified that the Horsches would have to disclose the history of termite damage to potential purchasers of the farmhouse. Even if all termite damage was repaired and there was no structural damage to the farmhouse, the value of the farmhouse was reduced by $20,000 because of the history of termite damage.

Terminix's expert witness testified that, if the termite damage was repaired, the farmhouse would not decrease in value.

At the close of evidence, the court entered a directed verdict in favor of the Horsches on the issue of liability. The issue of the Horsches' right to damages, for both the cost of repair of the termite damage and the diminution in value of the farmhouse, was submitted to the jury. The jury returned a verdict in favor of the Horsches for repair damages in the amount of $5,045 and for diminution in value damages of $12,500. The trial court subsequently granted the Horsches' motion for attorney fees and related costs in the amount of $2,504.97.

1. Damages.

The Horsches sought recovery on the theory of negligence. At the close of evidence, the court found Terminix liable as a matter of law and then ruled the Horsches were entitled to present to the jury a theory of damages that included both the cost of repair and the diminution in market value of the property. This ruling is a conclusion of law, and thus this court's review is unlimited. *Kvassay v. Murray*, 15 Kan. App. 2d 426, Syl. ¶ 1, 808 P.2d 896, *rev. denied* 248 Kan. 996 (1991).

Terminix claims the Horsches' only measure of damages was cost of repair and that, when the injuries to real estate are found to be temporary or repairable, the diminished value of the property will not be used as the measure of recovery.

Terminix's argument is based on the distinction between temporary and permanent damages to real estate. When one party negligently injures the property of another, the applicable rule for measuring damages should be applied that will reimburse the

owner only for the actual loss sustained. When damages are temporary, and of such a nature that the property can be restored to its original condition, the remedy for temporary damages is the cost of repair. *Foster v. Humburg*, 180 Kan. 64, 68, 299 P.2d 46 (1956).

Permanent damages are irreparable. *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, 262, 662 P.2d 1203 (1983). The remedy for permanent damages is the difference between the market value of the property before and after the injury. *Williams v. Amoco Production Co.*, 241 Kan. 102, Syl. ¶ 3, 734 P.2d 1113 (1987). Damages for permanent injury to real estate are not recoverable where the injury is only temporary. *Alexander v. City of Arkansas City*, 193 Kan. 575, Syl. ¶ 4, 396 P.2d 311 (1964).

The trial court clearly did not consider the issue of damages to be framed in the traditional context of temporary versus permanent damages. Repairs were required to replace the known, existing termite damage to the floor joists, bathroom wall, first floor window, and roof in order to restore the structural integrity of the farmhouse. Because of the stigma of termite damage, however, no amount of repair could restore the property to the contract value paid by the Horsches.

Whether a jury may consider damages for both the cost of repair of termite damage *and* diminution in value of the property due to the stigma of termite damage is an issue of first impression in Kansas. A Texas court has, however, ruled on the matter. *Terminix Intern., Inc. v. Lucci*, 670 S.W.2d 657, 663-64 (Tex. Civ. App. 1984). The *Lucci* court stated:

> "Both sides called expert witnesses to testify to the marketability of a home that has been damaged by termites. The testimony, of course, was conflicting, but there was substantial evidence that, although a house had been treated for termites and the damage repaired, the house's value in the market place could suffer a reduction. The rationale of the testimony dealt with the difficulty of ascertaining the extent of the termite damage, the tendency of termites to revive and return to their scene of harm and the general bad reputation of termites to survive and eat more. The testimony of the experts called by appellee was that the market value had been affected adversely as a result of the termite damage." 670 S.W.2d at 663.

The *Lucci* court held the evidence was sufficient to support the award of damages for both the permanent reduction in market value and the reasonable cost of repair. 670 S.W.2d at 664.

Terminix claimed before the trial court that the *Lucci* rationale had been disapproved by the Texas Supreme Court in *McKnight v. Hill & Hill Exterminators*, 689 S.W.2d 206 (Tex. 1985). Terminix is incorrect in this claim. The holding in *McKnight* relevant to *Lucci* is that, where an exterminator enters a contract for treatment of termite damage, he or she cannot be held responsible for termite damage occurring prior to the contract. 689 S.W.2d at 208-09. The *McKnight* court made no ruling on the liability of the exterminator based on a theory of negligence.

Terminix also claims the Horsches are not required to disclose the termite damage to prospective buyers because the damage is not material. Terminix claims the structural integrity of the farmhouse has not been impaired, there is no evidence of active infestation or hidden damage, and the damage can be repaired for $5,000.

When one party to a contract or transaction has knowledge of a fact material to the transaction and not within the fair and reasonable reach of the other party and which the other party could not discover by the exercise of reasonable diligence, the first party is obligated to reveal that material matter to the second party. A matter is material if it is one to which a reasonable person would attach importance in the determination of his or her choice of action in the transaction in question. *Lynn v. Taylor*, 7 Kan. App. 2d 369, 371-72, 642 P.2d 131, *rev. denied* 231 Kan. 801 (1982). Prior termite damage in the amount of $5,000 to the floor joists, bathroom studs, first floor window, and roof would meet the requirement of materiality. A reasonable prospective buyer would likely want to know this information before purchasing the farmhouse.

There is no one set rule under Kansas law for recovery of damages for the loss of real property. The measure of damages depends on the facts of the case. *Foster v. Humburg*, 180 Kan. at 68. One who commits a tortious act is liable for the injury and subsequent loss that are the natural and probable result of that act. Damages resulting from negligence are not limited to the reduction in value of the property where there are other damages. *Ettus v. Orkin Exterminating Co.* 233 Kan. 555, 562, 665 P.2d 730 (1983).

The rules for measuring damages are subordinate to the aim of making good the injury done. The determination of damages rests in good sense rather than in a mechanical application of a single formula. *Kansas Power & Light Co. v. Thatcher*, 14 Kan. App. 2d 613, 617, 797 P.2d 162, *rev. denied* 247 Kan. 704 (1990). The purpose of awarding damages is to make the injured party whole by restoring that party to the position he or she was in prior to the injury. *Samsel v. Wheeler Transport Services, Inc.* 246 Kan. 336, 789 P.2d 541 (1990), *overruled in part on other grounds* 248 Kan. 824, 844, 811 P.2d 1176 (1991). Damages are not allowed, however, which grant a windfall. *Service Iron Foundry, Inc. v. M. A. Bell Co.*, 2 Kan. App. 2d 662, 679, 588 P.2d 463 (1978).

The trial court did not err in its ruling that the jury could consider the award of cost of repair damages and diminution in value damages. Terminix's negligent act in failing to observe visible termite damage at the initial inspection and failing to note the damage in the report submitted to the Horsches caused them to proceed with the purchase of the farmhouse. There was testimony that, as a result of the purchase, the Horsches must now repair the known, existing termite damage. In addition, there was testimony that the stigma of termite damage had caused a permanent reduction in the value of the property.

Terminix cites *Uhock v. Sleitweiler*, 13 Kan. App. 2d 621, 629, 778 P.2d 359 (1988), for the claim that an exterminator's liability is limited to the cost of replacement or repair. Terminix's reliance on *Uhock* is misplaced. The language cited by Terminix refers to an exterminator's liability under a contract warranty for his work. The court in *Uhock* goes on to state that an exterminator may also be liable for damages to persons or property under tort law and that this liability is unlimited. 13 Kan. App. 2d at 628-29.

The damage to the Horsches was both the cost of repair and the diminution in value of the property. These damages were the natural and probable result of Terminix's negligent act. There was testimony the cost of repair *would not* restore the property to the value paid by the Horsches. In order to make them whole, the trial court properly ruled the jury could consider both types of damages. There was no windfall to the Horsches.

The facts of the case require that both types of damages be considered in order to restore the Horsches to the position they were in prior to Terminix's negligent act. The trial court did not err in allowing the jury to consider both types of damages.

2. Diminution in value testimony.

The trial court allowed Suhm, the Horsches' expert witness, to testify that, because there was evidence of past termite damage to the farmhouse, the value of the property was permanently reduced by $20,000. This diminution in value figure was based on a fear in the marketplace concerning termite-damaged property that results even when the known termite damage is repaired. The jury awarded the Horsches $12,500 in damages on the claim of diminution in value.

Under Kansas law, recovery will not lie where the alleged damages are too conjectural or speculative to form a basis for measurement. For recovery of damages, there must be some reasonable basis for computation which will enable the trier of fact to arrive at an approximate estimate of the amount of loss. *Bridges v. Bentley,* 244 Kan. 434, 441, 769 P.2d 635 (1989).

Terminix claims Suhm arrived at the $20,000 estimate through speculation and conjecture; thus, the testimony should not have been submitted to the jury.

Suhm was a licensed real estate broker and building contractor. His experience in the construction business began in 1946. He had been in the real estate business as a broker and a salesman for 32 years. He had been a real estate appraiser for 25 years. As a real estate broker, he appraised property frequently. His brokerage business included residential homes in Sedgwick County. He had testified in court on prior occasions as an expert in real estate and was permitted to give opinions on the fair market value of property.

Suhm was furnished with a copy of the real estate purchase contract and Terminix's termite inspection report, as well as the repair estimate and photographs of the property. He also inspected the farmhouse for termite damage.

Suhm defined the fair market value of property as the price a willing buyer would pay a willing seller, with the property exposed on the market for a reasonable time. His estimate of the

fair market value of the property at the time of the sale in 1988, without considering the effects of termite damage, was the contract price of $50,000.

Suhm testified that, in his opinion, property with a history of termite damage sustained a diminution in value. This opinion was based on his experience in property values and his involvement in selling property with a history of termite damage. In his opinion, the value of the Horsches' property was reduced by $20,000 as a result of the history of termite damage.

In arriving at his opinion of diminished value, Suhm assumed there was no structural damage to the farmhouse. He did not rely on the estimated cost of repairs. The value of the property was diminished even if the repairs were made.

Suhm testified the Horsches would have to disclose the termite damage to any prospective buyer of the property. The fact the property had prior termite damage was of major importance. This was because a buyer might think there was some hidden damage to the property or that a prior termite treatment was not successful. Suhm did not, however, consider hidden termite damage in his estimate of the diminished value of the property.

The issue of expert testimony about fear in the marketplace caused by prior termite damage to a home and its effect on the value of that home is an issue of first impression in Kansas. Kansas courts do allow testimony about fear in the marketplace affecting the property value of land with electrical transmission lines or subject to easements thereof, as long as the testimony is not based on a personal fear. *Ryan v. Kansas Power & Light Co.*, 249 Kan. 1, Syl. ¶ 2, 815 P.2d 528 (1991).

Fear in the marketplace that reduces the value of the property is a factor considered by qualified witnesses in arriving at an opinion on the value of a specific piece of property. *Ryan*, 249 Kan. at 9. A qualified expert is entitled to express his or her opinion. The factors on which that opinion is based go only to the weight of the testimony and not to its admissibility. The testimony should be stricken only if the factors used by the expert go beyond his or her knowledge and expertise. An opinion based on personal observation and experience in the marketplace is admissible for such weight as the jury may choose to give it.

*Willsey v. Kansas City Power & Light Co.*, 6 Kan. App. 2d 599, 602, 631 P.2d 268, *rev. denied* 230 Kan. 819 (1981).

Suhm was well qualified to testify on the market value of property, and his opinion was based on his personal knowledge and experience. Terminix subjected him to vigorous cross-examination. Terminix offered testimony from its own expert witness to contradict Suhm's testimony.

Terminix claims Suhm initially based his opinion of diminished value on the possibility of hidden termite damage. It is correct that Suhm testified he assumed there was hidden damage because of the known damage on the first floor and attic of the farmhouse. He, however, clearly stated the possibility of hidden damage itself was not a factor in his estimate of the diminished value of the property.

Suhm never stated that his opinion of diminished value was based on his assumption there was, in fact, hidden termite damage in the home. He testified the possibility of hidden damage *was* a factor contributing to the psychology of the fear in the marketplace concerning termite-damaged property. A prospective buyer could be concerned that all termite damage had not been discovered or that a prior treatment had not been totally effective.

In addition to his market opinion on the property's diminution in value, Suhm testified to his personal experience in selling property with termite damage: He had once lost $4,000 on a house in which he had invested $18,000, a loss of about 22 percent. Here, the jury awarded damages in the amount of 25 percent of the contract value of the house.

The jury had the opportunity to weigh Suhm's testimony along with that of Terminix's expert witness, who testified that, if the damages were repaired, the property would not diminish in value. In addition, Suhm's testimony about the actual percentage value he lost on a termite-damaged property provided the jury with a reasonable basis for estimating the amount of loss in this case. See *Bridges v. Bentley*, 244 Kan. at 441.

There was sufficient evidence to support a trial court's conclusion that the damages were neither speculative or conjectural. A reasonable person could agree with the trial court's decision to admit Suhm's testimony. The trial court did not abuse its discretion in admitting the testimony.

3. Attorney fees and related costs.

The court awarded the Horsches $2,504.97 in attorney fees and costs. Although the court did not cite the statutory authority for the award, the Horsches claimed the fees and costs under K.S.A. 1992 Supp. 60-211, K.S.A. 60-237(c), and K.S.A. 60-2007(b). The court found that Terminix acted without a reasonable basis in fact and in bad faith in denying that termite damage was visible at the initial inspection. The court also found that a reasonable inquiry by Terminix would have led it to admit the termite damage was visible at least by the time the Horsches' request for admissions was served.

The assessment of costs lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Rood v. Kansas City Power & Light Co.*, 243 Kan. 14, 23, 755 P.2d 502 (1988) (K.S.A. 60-211 and K.S.A. 60-2007[b]); see *Divine v. Groshong*, 235 Kan. 127, 142, 679 P.2d 700 (1984) (K.S.A. 60-237[c]). Judicial discretion is abused only where no reasonable person would take the view of the trial court. If reasonable persons could differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion. See *Wahwasuck v. Kansas Power & Light Co.*, 250 Kan. 606, 609, 828 P.2d 923 (1992).

Based upon our review of the record, a reasonable person could agree with the trial court's award of fees and costs under any of the statutes cited by the Horsches.

Affirmed.