(642 P.2d 131)
No. 52,623

RICHARD LYNN, *Appellee,* v. J. SCOTT TAYLOR, *Appellant,* THRIFT-
WAY, INC., *Defendant,* L. G. LANGSTON, *Appellant.*
Petition for review denied May 21, 1982.

Opinion filed March 18, 1982.

*Harry L. Najim,* of Najim & Baker, of Wichita, for appellant J. Scott Taylor.

*John P. Woolf,* of Martin, Pringle, Fair, Davis & Oliver, of Wichita, for appellant L. G. Langston.

*James L. Burgess* and *Robert T. Cornwell,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, for appellee.

Before ABBOTT, P.J., PARKS and MEYER, JJ.

PARKS, J.: Plaintiff Richard Lynn brought this action for actual and punitive damages arising out of his purchase of a termite-damaged residence. The seller, J. Scott Taylor, and realtor, L. G. Langston, were sued for fraud while Thriftway, Inc., which performed one of the termite inspections, was charged with negligence.

In early October of 1977, Lynn contacted an acquaintance, Buel Kent, who was a real estate broker associated with defendant Langston's business, Langston Realty Company. Mr. Lynn decided to purchase the residential property owned by Taylor and entered into a contract on October 5, 1977.

Lynn expressed his desire to have the property inspected for termites and Kent advised Lynn that if he had no preference he would see to the matter and have the inspection done. Thereafter, Kent contacted Bob Burton of Midwest Pest Control, Inc. and requested that he inspect the premises. Burton did so and found evidence of prior termite infestation in the crawl space under the house and minor termite damage toward the front of the house underneath the front door. Burton then called Langston Realty and left a message that he could not clear the property and that he recommended treatment. Langston received the message and called Taylor to advise him of the results of the inspection. Taylor indicated that he had received certification that the house was termite-free when he purchased the property and wanted a second opinion. Taylor then contacted Thriftway, Inc. to obtain another inspection. When Thriftway submitted its Wood Infestation Report, dated November 23, 1977, clearing the property, Taylor delivered a copy to the financing institution and the transaction was subsequently closed.

It is undisputed that no one, prior to the closing, advised Lynn that the first inspection was made or that the property did not pass inspection. It was not until Mr. Homer Doll was doing some remodeling in the residence that the termite damage was brought to the attention of Lynn. Subsequently, Lynn called Taylor who made reference to at least one prior inspection and indicated that "Bob didn't clear the house." When Lynn later checked with Kent, he was advised that he didn't know of any "Bob" who had inspected the house.

The trial court held that Thriftway was liable to Lynn for negligence and that Taylor and Langston were liable for fraudulently concealing the inspection conducted by Midwest Pest Control. The trial court also held that all three defendants were jointly and severally liable for the actual damages of $13,246 and, in addition, awarded punitive damages against both Langston ($20,000) and Taylor ($10,000). Langston and Taylor appeal. Lynn cross-appeals the amount of the actual damages awarded.

We first consider whether the trial court erred in finding fraudulent concealment by Langston and Taylor.

When one party to a contract or transaction has superior knowledge, or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, he is under a legal obligation to speak, and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge the expediency of the bargain. *Sippy v. Cristich,* 4 Kan. App. 2d 511, Syl. ¶ 2, 609 P.2d 204 (1980). Furthermore, actual knowledge of the defect must be shown to support a claim of fraudulent concealment, *Miles v. Love,* 1 Kan. App. 2d 630, 632, 573 P.2d 622, *rev. denied* 223 Kan. clxxi (1977), and the matter concealed must be material to the transaction. *Griffith v. Byers Construction Co.,* 212 Kan. 65, 73, 510 P.2d 198 (1973).

There is no question but that Taylor and Langston had information concerning the house which Lynn did not and could not have had and that this information could have influenced the buyer's decision. However, because there was evidence that no live termites existed when Burton inspected the house, that all damage pre-existed 1970 and that none of the damage was readily visible, the focus of our inquiry must be whether the information which was concealed was material.

The report from Bob Burton indicated that he could not certify the house and that treatment was necessary. The trial court held that this information would be a "red flag" to a buyer and that Lynn testified that he would not have purchased the property had he known of the inspection. Nevertheless, Taylor contends that all the report indicates is that Burton mistakenly believed that treatment was necessary for live termites. Since treatment of the house would not have repaired the existing damage or revealed the extent of that damage, Taylor contends that Burton's report was not material.

A matter is material if it is one to which a reasonable person would attach importance in determining his choice of action in the transaction in question. *Sippy,* 4 Kan. App. 2d at 516. Burton testified that he observed termite damage to the floor joists in the crawl space under the house while the Thriftway report simply

stated that there was evidence of earlier treatment. Lynn had indicated to his realtor that he planned to remodel the house and his request for a termite inspection evidenced his concern that the house be structurally sound. Thus, evidence of earlier treatment would certainly not have the same import as evidence of previous damage. Therefore, if Lynn had the opportunity to speak to Burton or hear his report of the inspection, it may well have influenced his decision to buy the house. We hold that the trial court's conclusion that this information was material is supported by the evidence.

We conclude that the trial court was correct in finding that Langston and Taylor committed fraud when they failed to communicate to Lynn the fact that there was another inspection and that the property did not pass the inspection. Clearly, they had knowledge which was not within the fair and reasonable reach of Lynn.

Both Langston and Taylor maintain that the trial court went outside of the issues presented by the parties in reaching its decision. It is true that the pretrial order states that "the mixed issues of law and fact are framed by the pleadings." However, it is clear from other portions of the pretrial order that Lynn claimed Langston and Taylor had willfully concealed the fact that a previous inspection had been done and the results of that previous inspection. Defendants could not have been surprised or prejudiced by the theory adopted by the court; thus, we find no merit to this argument.

Langston next claims that the trial court erred when it entered judgment against all defendants (Thriftway, Langston and Taylor) jointly and severally. His contention is based on the holding that the enactment of the comparative negligence statute abolished the concept of joint and several liability. *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978). Since Thriftway was only liable for negligence, the substance of Langston's claim is that in order to secure it the benefits of comparative negligence and liability limited to fault, the court should have calculated a percentage of causal fault attributable to Thriftway and assessed the balance of the fault jointly to Langston and Taylor.

In *Kennedy v. City of Sawyer,* 228 Kan. 439, 449, 618 P.2d 788 (1980), the Court concluded that the doctrine of comparative fault is applicable to cases involving multiple claims against a number

of defendants for negligence, breach of implied warranty and strict liability. The Court reasoned that in order to preserve the right of a defendant charged with negligence to only be liable for his proportionate fault, the fault of the various defendants must be compared even though some of the claims involved acts other than negligence. There is, however, no authority for including an intentional tort such as fraud within the ambit of comparative fault principles. In *Sandifer Motors, Inc. v. City of Roeland Park,* 6 Kan. App. 2d 308, 317-18, 628 P.2d 239, *rev. denied* 230 Kan. 819 (1981), this Court, in discussing the differences between negligent and intentional nuisance, indicated that comparative negligence could not apply to intentional torts. Langston does not argue to the contrary but contends that the court should have attributed a percentage of fault to Thriftway and diminished the damages against Langston and Taylor by that percentage. This argument ignores the fact that above all, comparative negligence is a *comparison* of fault. See *Albertson v. Volkswagenwerk Aktiengesellschaft,* 230 Kan. 368, 373, 634 P.2d 1127 (1981). Langston does not contend that the plaintiff was contributorily negligent; therefore, unless fraud has a fault basis with which negligence can compare, it is difficult to envision how the court should have divined a particular portion of fault as traceable to Thriftway.

The abolition of joint and several liability effected by *Brown* was limited to comparative negligence actions and did not eliminate such liability in all actions in which a negligence claim is established. We see no reason to extend that holding to this case simply because one defendant was negligent. Accordingly, it was proper for the trial judge to assess the actual damages against all defendants, jointly and severally.

Finally, Langston and Taylor both contend that the assessment of punitive damages was inappropriate and alternatively, that the amount was excessive.

A verdict of actual damages is essential to a recovery of punitive damages. Punitive damages may be recovered whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy. *Lindquist v. Ayerst Laboratories, Inc.,* 227 Kan. 308, 316, 607 P.2d 1339 (1980). Here the trial court found that both Langston and Taylor were guilty of fraudulent concealment and we, by this opinion, concur in that finding. Therefore, punitive damages were properly assessed in this case.

It is difficult, if not impossible, to lay down precise rules by which to test the question of when a verdict for punitive damages is excessive. Punitive damages are imposed by way of punishing a party for malicious or vindictive acts or for a willful and wanton invasion of another party's rights, the purpose being to restrain him and to deter others from the commission of like wrongs. The law establishes no fixed ratio between actual and exemplary damages by which to determine excessiveness. In assessing punitive damages the nature, extent, and enormity of the wrong, the intent of the party committing it, and all circumstances attending the transaction involved should be considered. *Henderson v. Hassur,* 225 Kan. 678, 694, 594 P.2d 650 (1979); and cases cited therein.

With these principles in mind, we consider some of the evidence that was before the trial court. Although it was the buyer who requested the termite inspection, Langston called the seller concerning the results of the first inspection and then permitted the closing to take place without any notation that he had received the message from Burton. Taylor not only concealed the information but, in addition, obtained a "second opinion" and proffered it to Lynn as an affirmative representation of what the condition was when in fact he had reason to believe that the report was false. Both Taylor and Langston were experienced real estate brokers and the trial court was apparently concerned with the danger of sellers and agents "shopping around" for a favorable termite inspection. In light of all the circumstances, we cannot say that the amount of punitive damages awarded in this case is such as to shock the conscience of this court. Accordingly, we hold the judgment is not excessive.

Turning now to the issue raised on cross-appeal, Lynn seeks additional actual damages for the cost of removing and replacing drywall in the family room and garage. Lynn argued for the assessment of these damages before the trial court and was denied relief. Unless there was arbitrary disregard of undisputed evidence, this negative finding should not be disturbed. *Carter v. Kansas Gas & Electric Co.,* 5 Kan. App. 2d 602, Syl. ¶ 4, 621 P.2d 448 (1980). Clearly the evidence regarding damages was not undisputed in this case. For these reasons, the case is affirmed as to the cross-appeal.

Judgment affirmed.