(116 P.3d 764)
No. 92,817

KELLY L. FITZMORRIS, *Appellant,* v. MARK DEMAS and DIANN DEMAS d/b/a D&M PEST CONTROL, LARRY MARSHALL, d/b/a MARSHALL AUCTION AND REALTY, and CAROLYN K. PICKELL, *Appellees.*

Opinion filed August 5, 2005.

*Robert E. Barker,* of Chanute, for appellant.

*David W. Rogers,* of Rogers Law Office, of Fredonia, for appellee Larry Marshall d/b/a Marshall Auction and Realty.

Before GREENE, P.J., CAPLINGER and BUSER, JJ.

CAPLINGER, J.: In this appeal, we are asked to interpret the scope of an agent's obligation under K.S.A. 2004 Supp. 58-30,106(d)(4) to disclose contradictory information from a third-party inspection report to the potential buyer of residential real estate. The buyer, Kelly Fitzmorris, appeals from the district court's ruling denying her motion for summary judgment and granting summary judgment to the seller's agent, Larry Marshall, d/b/a Marshall Auction and Realty. We reverse and remand, finding as a matter of law that Marshall was aware of material information in a prior inspection report which contradicted information in a termite inspection report provided to Fitzmorris and Marshall's failure to disclose this information was a violation of K.S.A. 2004 Supp. 58-30,106(d)(4).

The inspection report which is at the heart of this appeal was requested by potential buyers who are not parties to this appeal. Those buyers, Roy and Laura Harkrader, entered into a contract with defendant Carolyn Pickell to purchase Pickell's residence in Fredonia for $35,000. Prior to closing, the Harkraders hired Morrow Construction to inspect the home. Morrow Construction provided the Harkraders a written report (Morrow report) stating:

"This is an inspection bid.
"Southwest corner of foundation is leaning out 1½ [inches]. Sill plate on center support beam is destroyed by termites on outer perimeter of the house. Sill plates [are] the same as center ones. Approx. 30 2x8 floor joists are destroyed by termites. Some sub flooring damaged.
"Estimated cost to repair between 18,000.00 to 25,000.00.
"Live termites [were] not found."

The Harkraders voided the real estate contract based on the termite damage revealed by the Morrow report. A copy of the Morrow report was provided to Pickell's agent, Larry Marshall. Marshall then provided Pickell with a copy of the Morrow report, informed her that the information in the report needed to be disclosed to any future potential buyers, and suggested getting another reasonable bid for the repair of the termite damage.

Pickell then hired Victor Neese of Sunrise Construction to inspect the termite damage and estimate repairs. Neese submitted a written report (Neese report) stating the home "has had damage

to the floor jointes [*sic*] due to termites the damage does not seem to be active—that is the only thing that is visible—the cost to repair the said property will be $5,000 or less."

Subsequently, Fitzmorris looked at the property. Marshall did not advise Fitzmorris of the termite damage when she first viewed the property. However, Fitzmorris learned independently from an individual who lived near the home that the floors in the home had sustained termite damage. When Fitzmorris then asked Marshall for a key so she could look under the home, Marshall advised her of the damage to the floors and of Neese's $5,000 repair estimate. However, Marshall did not inform Fitzmorris of the Morrow report or its substantially higher repair estimate of $18,000 to $25,000. Fitzmorris' boyfriend and her boyfriend's father looked under the house at the termite damage.

During contract negotiations, Fitzmorris was given the choice of either paying $35,000 for the house and having Pickell repair the termite damage to the floors or receiving a $5,000 price reduction while taking responsibility for the repairs herself. Ultimately, the parties agreed on a purchase price of $29,500, with the understanding that Fitzmorris was responsible for repairing the termite damage to the floors.

The real estate agreement required Fitzmorris to have the "accessible areas of the property visibly inspected by a licensed pest control firm to determine whether or not there are termites." Prior to closing, Fitzmorris had defendant D & M Pest Control (D & M) conduct this termite inspection. D & M issued a report stating that the property "[h]as had previous damage from termites on floor joices [*sic*]," but otherwise found no visible evidence of termite infestation. The real estate transaction closed in October 2002.

Shortly thereafter, Fitzmorris began redecorating the home and removed some paneling in the house during that process. She discovered substantial termite damage to the walls and eventually found in the ceilings and rafters. On November 1, 2002, Fitzmorris contacted Marshall and "told him the house was completely eaten up." Marshall stated he would need to speak with Pickell. Several days later, Marshall telephoned Fitzmorris and advised her that

because Fitzmorris bought the house "as is," nothing could be done to rectify the situation.

Fitzmorris brought suit against D & M, Marshall, and Pickell alleging fraudulent concealment and negligent misrepresentation against Marshall, fraud and negligent misrepresentation against Pickell, and negligence against D & M. The defendants each filed separate motions for summary judgment. Fitzmorris filed a motion for partial summary judgment, seeking judgment only against Marshall on her claim of fraudulent concealment. Fitzmorris argued Marshall fraudulently concealed the Morrow report, that the report was "material," and that had Marshall disclosed the report, Fitzmorris would have known (1) the report was the basis for the voiding of the contract for structural damage by another buyer and (2) the structural damage was estimated to cost nearly as much as the home itself.

The district court granted summary judgment in favor of all defendants. Fitzmorris appeals only from the district court's award of summary judgment in favor of Marshall.

The sole issue presented in this appeal is whether the district court, in granting summary judgment to Marshall, erred by concluding that Marshall, as Pickell's agent, had no duty under K.S.A. 2004 Supp. 58-30,106(d)(4) to disclose the Morrow report to Fitzmorris.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, [the reviewing court must] apply the same rules and where . . . reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

*Responsibility of seller's agent to disclose defects*

The Brokerage Relationships in Real Estate Transactions Act (BRETA), K.S.A. 2004 Supp. 58-30,101 *et seq.*, defines the responsibility of real estate licensees with respect to disclosures of defects. K.S.A. 2004 Supp. 58-30,106 sets out the minimum obligations of seller's and landlord's agents. K.S.A. 2004 Supp. 58-30,106(d)(3) discusses the obligations of seller's agents to provide written reports:

"Except as provided in subsection (d)(4), a seller's or landlord's agent is not required to disclose to a client or customer information relating to the physical condition of the property if a written report regarding the physical condition of the property has been prepared by a qualified third party and provided to the client or customer."

Here, the seller's agent, Marshall, provided Fitzmorris with only one of the two written inspection reports detailing the condition of the property. Marshall argues he thus complied with his obligation under subsection (d)(3) to provide "a written report." As Fitzmorris accurately points out, however, the language of K.S.A. 2004 Supp. 58-30,106(d)(3) is qualified by the phrase: "[e]xcept as provided in subsection (d)(4)."

K.S.A. 2004 Supp. 58-30,106(d)(4) provides: "A seller's or landlord's agent shall disclose to the client or customer *any* facts actually known by the licensee that were omitted from or contradict *any* information included in a written report described in subsection (d)(3)." (Emphasis added.) Fitzmorris argues that because Marshall knew of the Morrow report and was aware that information contained in that report was omitted from and contradicted information contained in the Neese report, Marshall was required to disclose the Morrow report pursuant to K.S.A. 2004 Supp. 58-30,106(d)(4).

Interpretation of a statute is a question of law over which an appellate court exercises unlimited review. *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003). " 'In construing statutes and determining legislative intent, several provisions of an act in pari materia must be construed together with a view of reconciling and bringing them into workable harmony if possible.' [Citation omitted.]" *State v. Huff*, 277 Kan. 195, 203, 83 P.3d 206 (2004).

A literal reading of K.S.A. 2004 Supp. 58-30,106(d)(4) suggests that any fact, regardless of materiality, must be disclosed by a seller's agent to a customer, so long as such fact is not mentioned in a written report prepared by a qualified third party. However, both parties agree that we should import into K.S.A. 2004 Supp. 58-30,106(d)(4) a materiality requirement such as that included in K.S.A. 2004 Supp. 58-30,106(d)(1), which provides: "A seller's or landlord's agent owes no duty or obligation to a customer, except that a licensee shall disclose to any customer all *adverse material* facts actually known by the licensee." (Emphasis added.)

We agree with the parties that subsections (d)(3) and (d)(4) should import the materiality requirement of K.S.A. 2004 Supp. 58-30,106(d)(1). Without such a requirement, a seller's obligation would be unlimited, contrary to the intent and language of the statute. Thus, we must consider whether the Morrow report was a "material" fact necessitating disclosure under K.S.A. 2004 Supp. 58-30,106(d)(4).

A matter is material if it is "one to which a reasonable person would attach importance in the determination of his or her choice of action in the transaction in question." *Horsch v. Terminix Int'l Co.*, 19 Kan. App. 2d 134, 138, 865 P.2d 1044 (1993), *rev. denied* 254 Kan. 1007 (1994).

Not surprisingly, the parties' views regarding materiality differ substantially. Fitzmorris argues that a repair estimate of $18,000 to $25,000 for termite damage to a house which was listed for sale at $35,000 is clearly material and should have been disclosed. On the other hand, Marshall suggests that the statute does not anticipate disclosure of differing amounts of damages, but only differing descriptions as to the physical condition of the premises. Marshall argues the Morrow report was not materially different than the Neese report with respect to its description of the damage and thus did not need to be disclosed to Fitzmorris. The district court agreed with Marshall, finding: "[I]t is the damage to the property that is relevant, not what one contractor might charge to repair it versus another contractor."

Initially, we note that we do not necessarily agree that the description of the damage contained in the Morrow report did not

materially differ from that contained in the Neese report. The Neese report referred only generally to damage to an unspecified number of floor joists, while the Morrow report indicated damage to: (1) the sill plate on the center support beam, which was destroyed by termites; (2) the corner of the foundation, which was leaning out 1 1/2 inches; (3) the sub flooring; and (4) approximately 30 floor joists. This more extensive damage description in the Morrow report is particularly significant in light of the much higher repair estimate of $18,000 to $25,000, as opposed to the $5,000 or less repair estimate contained in the Neese report.

In any event, we do not believe K.S.A. 2004 Supp. 58-30,106(d)(4) limits the disclosure requirement to contradictory or omitted information regarding *descriptions* of damage as opposed to the *estimated costs* to repair the damage. Rather, subsection (d)(4) requires the seller's agent to disclose *any* facts actually known by the licensee that were omitted from or contradict *any* information included in a written report described in subsection (d)(3). Moreover, when an expert report provides both a description and an estimated cost to repair the damage, as the Morrow report did here, the amount of damage is intrinsically tied to the description and extent of damages. See, *e.g.*, *Horsch* 19 Kan. App. 2d 134 (prior termite damage in the amount of $5,000 to floor joists, bathroom studs, a window, and the roof met the requirement of materiality as a reasonable prospective buyer would want to know this information before purchasing home for $50,000).

Further, Marshall misapplies the materiality requirement. Marshall focuses upon Fitzmorris' testimony regarding the nature of the termite damage and the fact that she was aware at the time she purchased the house of floor damage but was unaware of termite damage to the walls, the ceiling, and the rafters. Marshall argues the Morrow report could not have been material to Fitzmorris' decision because the Morrow report did not detail damage to walls, ceiling, and rafters. Marshall also suggests that any estimate of damage is simply that, an estimate, and has no significance or impact other than as an estimate. Marshall's view is best exemplified in the following statement contained in his response to Fitzmorris' summary judgment motion: "All that this Morrow estimate infers

is that if [Fitzmorris] had hired Morrow to repair the floor damage she would have ended up paying thousands of dollars more to repair the damage than she would have . . . paid if Victor Neese had repaired the exact same damage."

However, in considering materiality in the context of the facts before us, we do not consider whether the contradictory or omitted information contained in the Morrow report can be explained, rationalized, or disputed but, rather, whether a reasonable person would have considered the information contained in the report important in determining whether to purchase the property.

We are guided in that determination by the analogous case of *Lynn v. Taylor*, 7 Kan. App. 2d 369, 642 P.2d 131, *rev. denied* 231 Kan. 801 (1982). There, two termite inspections were conducted prior to the sale of a home. The first inspector refused to certify the house, finding prior termite damage and recommending treatment. The second inspector merely discovered evidence of prior termite treatment. Only the second inspection was provided to the purchaser of the house.

The seller in *Lynn* argued the first report was not material because there was no active infestation and treatment would not have repaired the existing damage or revealed the extent of that damage. This court, noting "evidence of earlier treatment would certainly not have the same import as evidence of previous damage," concluded the withheld information referencing prior termite damage was material. 7 Kan. App. 2d at 372. The court pointed out that "if [the buyer] had the opportunity to speak to [the first inspector] or hear his report of the inspection, it may well have influenced [the buyer's] decision to buy the house." 7 Kan. App. 2d. at 372.

Similarly, we conclude here that a reasonable person, in determining whether to purchase the home, may well have attached importance to the more extensive description of the termite damage and the much higher repair estimate contained in the Morrow report. This is particularly true in light of the proportionality of the repair estimate to the listed price of the home and the fact that the house failed the prior structural inspection, causing the previous buyers to void their purchase contract.

Because the seller's agent was aware of this material information and was aware that this information contradicted information contained in the written report provided to the buyer, the seller's agent was required to disclose the information pursuant to K.S.A. 2004 Supp. 58-30,106(d)(4).

Accordingly, we hold the district court erred in granting Marshall summary judgment and denying summary judgment to Fitzmorris on her claim of fraudulent concealment. We reverse and remand with directions to the district court to grant summary judgment to Fitzmorris on her claim of fraudulent concealment and for further proceedings consistent therewith.

Reversed and remanded with directions.