(187 P.3d 126)
No. 97,847

JASON L. OSTERHAUS, *Appellant,* v. JEAN BETTY TOTH, *et al.,* and
JEFFREY S. SCHUNK and TOPPROS REAL ESTATE, INC., *Appellees.*

Petition for review granted November 4, 2008.

Opinion filed July 3, 2008.

*James E. Kiley, Jr.,* of The Kiley Law Firm, LLC, of Overland Park, for appellant.

*John W. Nitcher,* of Riling, Burkhead & Nitcher, Chtd., of Lawrence, for appellees Jeffrey S. Schunk and TopPros Real Estate, Inc.

*Thomas S. Busch,* of Holman, Hansen & Colville, P.C., of Overland Park, for appellees Jean Betty Toth and Toth Trust.

Before MARQUARDT, P.J., CAPLINGER and LEBEN, JJ.

MARQUARDT, J.: Jason L. Osterhaus appeals the district court's grant of summary judgment to Jean Betty Toth, individually; Jean Betty Toth, as trustee of the Marvin E. Toth and Jean Toth, cograntor trust dated October 31, 1989; Jeffrey S. Schunk, Toth's real estate agent (Schunk); and TopPros Real Estate, Inc., Schunk's real estate agency (TopPros). We affirm in part, reverse in part, and remand.

Mark and Cathy Ross put their Overland Park home on the market in March 2001. They completed a seller's disclosure statement acknowledging movement of walls or foundation and water leakage in the basement.

The Rosses advertised in the newspaper, and Jean Betty Toth called to inquire about the home. Mark showed Toth the house and discussed movement of the foundation walls, showed her the cracks in the basement walls, and discussed the repairs that were made. Toth was concerned about water leakage and said she would have the property inspected. Within 20-30 minutes after leaving the Ross home, Toth offered to purchase the house.

A few days later, Toth had the home inspected. The inspection showed hairline cracks in the foundation walls. Toth was apparently satisfied with the results of the inspection because the sale closed in May 2001. After closing on the property, Toth called the Rosses on numerous occasions to ask questions about the property or to seek assistance. In September 2001, after a period of heavy rain, Toth told the Rosses that she had water in the basement. Toth told

Mark that she called a foundation inspector who determined that the west foundation wall had buckled. Toth showed Mark the interior wall that had buckled and asked Mark what she should do to fix the water problem in the basement. At Mark's suggestion, Toth purchased dirt which Mark put around the outside of the foundation.

In spring 2002, Toth put the property on the market. A realtor's sign was in the yard. David Tomlinson wanted to see the property and asked his real estate agent to make an appointment. However, Tomlinson testified that his agent was unable to "get us in there" between April and July.

In July 2002, Toth signed a contract to sell her property with Jeffrey Schunk, a realtor who owns TopPros. Toth's disclosure statement was signed on July 12, 2002. In paragraph 2, "seller's instructions," it states:

"SELLER agrees to disclose to BUYER all material defects, conditions and facts known to SELLER which may materially affect the value of the property. This disclosure statement is designed to assist SELLER in making these disclosures. The listing broker, the selling broker and their respective agents will rely on this information when they evaluate, market and present the Seller's property to prospective Buyers."

Section 8 of Toth's seller's disclosure statement covering structural, basement, and crawl space items required disclosure of any items of which she was aware. Toth answered "no" to the following questions:

"(a) Any movement, shifting, deterioration, or other problems with walls, foundations, crawl space or slab?
"(b) Any cracks or flaws in the walls, ceilings, foundations, concrete slab, crawl space, basement floor or garage?
"(c) Any water leakage or dampness in the house crawl space or basement?"

Also on that disclosure statement, Toth stated that the house had an attic fan, a central vac and attachments, and a convection oven. The record on appeal shows that these items had never been in the house.

Schunk did a "walk-through" of the basement but stated that he did not do an in-depth inspection. Schunk testified that he did not go over the seller's disclosure statement with Toth. Schunk as-

sumed that all of Toth's answers to the disclosure questions were accurate and had "no reason to question whether or not there's water in the basement." Schunk said that Toth never mentioned she had experienced water in the basement.

David Tomlinson made an offer to buy Toth's house on July 18, 2002, and had the property inspected. While the inspector was with Tomlinson in the basement, Tomlinson noticed a large crack in the back of a piece of sheetrock. Tomlinson explained that they were able to see the back of the sheetrock in the adjoining room because the room they were in was not finished. The inspector explained that the crack was caused by the movement of a foundation wall. Tomlinson canceled the contract on Toth's house on July 24, 2002, because of the structural problems. Toth signed the cancellation release agreement on July 26, 2002.

After Schunk received the notice of Tomlinson's contract cancellation, along with Tomlinson's inspection report, Schunck went to Toth's home to look at the west wall in the basement and recommended to Toth that she contact Glenn Marsee and Son Foundation Repair, Inc. (Marsee) to repair the crack in the foundation. On July 31, 2002, Marsee put epoxy in "eighteen feet of cracks" in the west foundation wall.

Two days after Tomlinson cancelled his contract, Ronda Lenci, Osterhaus' real estate agent, expressed interest in the house. Schunk claimed that he provided Lenci with a copy of Tomlinson's inspection report and explained the contract was terminated due to issues with the foundation, which were going to be repaired. Lenci testified that she did not recall ever being told about Tomlinson's inspection report, Tomlinson's contract cancellation, or foundation problems in Toth's basement.

Osterhaus made an offer on Toth's home and signed the "Buyer Acknowledgment and Agreement" of Toth's seller's disclosure statement on July 26, 2002. That acknowledgment reads:

"1. I understand and agree that the information in this form is limited to information of which SELLER has actual knowledge and that SELLER need only make an earnest effort at fully revealing the information requested.

"2. This property is being sold to me without warranties or guaranties of any kind by SELLER or BROKER(S) or agents concerning the condition or value of the Property.

"3. I agree to verify any of the above information, and any other important information provided by SELLER or BROKER (including any information obtained through the multiple listing service) by an independent investigation of my own. I have been specifically advised to have the property examined by professional inspectors.

"4. I acknowledge that neither SELLER nor BROKER is an expert at detecting or repairing physical defects in the property.

"5. I specifically represent that there are no important representations concerning the condition or value of the property made by SELLER or BROKER on which I am relying except as may be fully set forth in writing and signed by them."

Toth counteroffered to Osterhaus on July 27, 2002, and disclosed that there was no attic fan, central vac and attachments, or convection oven on the property. However, Toth never amended her disclosure statement to disclose to Osterhaus that she had had water in her basement, there was movement of the foundation, or there were cracks in the foundation.

Osterhaus hired an inspector and was present for most of the inspection. Osterhaus testified that on previous tours of the home, he did not notice any cracks in the basement walls because there were shelves and appliances in front of the cracked sheetrock. However, at the time of the inspection on August 3, 2002, Osterhaus noticed a crack in the west wall of the basement that had been sealed. The inspection report notes: "Basement is partially finished, viewing was restricted by wall, ceiling and floor coverings in area, Basement is only partially accessible due to storage in areas." The comment section for the basement walls notes: "Poured concrete, Major cracking is noted. Repairs have been made. Appears serviceable." Osterhaus received this inspection report before he purchased the property.

In spring 2004, Osterhaus noticed some water seeping into the carpet in a finished portion of the basement. Osterhaus eventually discovered that water was coming down the foundation wall behind the sheetrock. By summer 2004, Osterhaus experienced water leakage "almost every time" that it rained. This has resulted in "substantial amounts of mold" behind the walls. Osterhaus estimates that it will cost over $80,000 to fully repair his home.

Osterhaus sued Toth, Schunk, and TopPros. Count I alleged deceptive and unconscionable acts in violation of the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq*. Count II alleged fraud, claiming that Toth and Schunk worked to actively conceal the water problems in the basement. Count III alleged fraud by silence, claiming Toth and Schunk knew or should have known there were water problems in the basement. Count IV claimed negligent misrepresentation, and Count V alleged breach of contract.

Toth, Schunk, and TopPros filed summary judgment motions claiming that *McLellan v. Raines*, 36 Kan. App. 2d 1, 140 P.3d 1034 (2006), controls Osterhaus' claims.

After hearing from the parties' attorneys, the district court concluded that *McLellan* controlled and granted summary judgment to Toth, Schunk, and TopPros. The district court noted that Osterhaus had an independent inspection and knew there was " 'major cracking' " in the basement wall. Osterhaus appeals and maintains that *McLellan* is bad law and destroys the intended purpose of the seller's disclosure statement.

### *Summary Judgment*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007). Summary judgment is appropriate on claims under K.S.A. 50-626 and K.S.A. 50-627

only if there is no evidence of deceptive or unconscionable acts. *Bomhoff v. Nelnet Loan Services, Inc.* 279 Kan. 415, Syl. ¶ 4, 109 P.3d 1241 (2005).

Osterhaus contends that there are material facts in dispute, such as: whether Lenci received a copy of either the Tomlinson inspection report or the invoice from Marsee; whether Toth's failure to disclose her knowledge of water in the basement and movement of the foundation constitutes fraud; whether Toth's and Schunk's failure to disclose material facts constitutes fraud by silence; whether Toth's actions constitute a violation of the Kansas Consumer Protection Act; whether Schunk's and TopPros' actions or inaction violated the Brokerage Relationships in Real Estate Transactions Act; and whether Toth and Schunk were guilty of negligent misrepresentations.

### *Contract*

The interpretation and legal effect of a written contract are matters of law over which an appellate court has unlimited review. *Conner v. Occidental Fire & Cas. Co.*, 281 Kan. 875, 881, 135 P.3d 1230 (2006). Regardless of the construction given a written contract by the district court, an appellate court may construe a written contract and determine its legal effect. *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001).

The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction. *Anderson v. Dillard's Inc.*, 283 Kan. 432, 436, 153 P.3d 550 (2007). Interpretation of a contract provision should not be reached merely by isolating one particular sentence or provision but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. *Johnson County Bank v. Ross*, 28 Kan. App. 2d 8, 10-11, 13 P.3d 351 (2000).

The disclosure statement is a contract that was signed by Toth and Osterhaus. In *McLellan, Katzenmeier v. Oppenlander*, 39 Kan. App. 2d 259, 178 P.3d 66 (2008), and *Brennan v. Kunzle*, 37 Kan.

App. 2d 365, 154 P.3d 1094 (2007), the identical seller's disclosure statement form was used. It is the same disclosure form Toth used. In each instance, the buyer argued that the seller was either not truthful in its disclosures, that the buyer's inspection would not have reasonably discovered the problem, or that prior inspections which disclosed a problem were not provided to the buyer.

In *McLellan, Katzenmeier, Brennan,* and in Osterhaus' case, the disclosure statement signed by the buyer had a clause stating that the buyer was not relying on any representations concerning the property made by the seller or its realtor "except as may be fully set forth in writing and signed by them." As in the instant case, the buyers in *McLellan, Katzenmeier,* and *Brennan* conducted an independent home inspection prior to closing on the property.

After water issues were discovered, each buyer in *McLellan, Katzenmeier,* and *Brennan* brought suit alleging, among other claims, breach of contract, misrepresentation, and fraudulent misrepresentation. Panels of this court determined that these claims were meritless given the disclosure statement signed by each of the buyers. In *McLellan,* the panel held that "[t]he unambiguous language of paragraph 5 clearly directs McLellan to either indicate which representations she was relying on or agree to rely on none of them." 36 Kan. App. 2d at 8. In *Katzenmeier,* the panel held that "because the Katzenmeiers did not declare which representations they were relying on, it would seem that they had agreed not to rely on any of them." 39 Kan. App. 2d at 263. In *Brennan,* the panel held: "Because the Kunzles did not indicate any representations upon which they were relying, they appear to have waived their right to rely on the Brennans' statements in the disclosure statement and those made before the disclosure statement was signed." 37 Kan. App. 2d at 387.

In these three cases, the panels of this court interpreted the language of paragraph 5 as a release and reasoned that since the buyers in these cases released the sellers from any obligation to disclose adverse information, any false statements made by the sellers did not breach their duty to disclose. The panel in *McLellan* was also swayed by the fact that McLellan received notice of a

"chance of leaks" during her own home inspection. 36 Kan. App. 2d at 8.

Releasing the seller from any liability just because the buyer signed the buyer's acknowledgment and agreement is too simplistic. The district court must consider the disclosure statement, whether there was an inspection, and all of the facts surrounding the sale before concluding there was a waiver of the seller's untruths.

Toth, Schunk, and TopPro cite *Alires v. McGehee*, 277 Kan. 398, 85 P.3d 1191 (2004), claiming that Osterhaus had agreed not to rely on Toth's representations. In *Alires*, the seller's disclosure statement disclosed that there had been leaking or seepage in the basement. However, Alires claimed fraud because the seller failed to disclose all of the water problems. Alires signed the buyer's acknowledgment and agreement, agreeing to purchase "the property in its present condition only" and that the seller's statement "should not be accepted as a substitute for any inspections or warranties the buyer may wish to obtain." The court held:

"Under the facts of this case, the buyer of real estate could not reasonably rely upon representations of the seller when the truth or falsity of the representation would have been revealed by an inspection of the subject property and the misrepresentations were made prior to or as part of the contract in which the buyer contracted for the right to inspect, agreed that the statements of the seller were not warranties and should not replace the right of inspection, *declined inspection*, and waived any claims arising from defects which would have been revealed by an inspection." (Emphasis added.) 277 Kan. at 411-12.

The facts in Osterhaus' case are significantly different from *Alires*. Toth disclosed no water problems; whereas, McGehee disclosed water problems. Also, Alires declined to do an inspection; Osterhaus had an inspection which could not discover the water leakage. Further, Alires signed a statement agreeing to accept the property in "as is" condition. Osterhaus did not sign such a statement. *Alires* does not control Osterhaus' case.

As a general rule, one panel of our Court of Appeals is not bound by a decision of another panel of this court. The decisions of this court in *McLellan, Katzenmeier,* and *Brennan* held that the unambiguous language of paragraph 5 directed the buyer to indicate

which representations the buyer was relying on, or to agree to rely on none of them. We disagree with the interpretation by the other panels of this court that this language is unambiguous. The disclosure statement is a writing that is signed by the seller, and there is no requirement for a separate, second document signed by the seller. If there are material misrepresentations by a seller of real property in its disclosure statement, without consideration of all the facts surrounding the sale, the buyer's signature alone does not constitute a waiver of seller's material misrepresentations.

In *McLellan*, there was no allegation or admission that the seller had been untruthful on the disclosure statement. The evidence in *McLellan* was that the seller was not aware of water leakage or dampness in the basement. Here, and in *Katzenmeier* and *Brennan*, it is undisputed that the sellers knew there had been water in the buildings. It is undisputed that Toth was not truthful on her disclosure statement and, at some point, Schunk was also aware of that fact. The dissent suggests that we must affirm this case because "[t]he public develops reasonable expectations based upon the law as we have already explained it." 39 Kan. App. 2d at 1015. It is evident from the number of cases making their way to this court that the public is not relying on the interpretation in these cases.

By allowing the seller to make deliberate untruths, misstatements, or omissions of material facts on the seller's disclosure statement, panels of this court in *Katzenmeier* and *Brennan* have essentially ruled that the seller's disclosures are worthless. The district court, in granting summary judgment in *Brennan*, sanctioned the seller's untruths and omissions of material fact. Here, the district court relied on that analysis in granting summary judgment.

In *McLellan*, repairs were disclosed to the buyer before the parties closed on the house. Here, Toth did not disclose to Osterhaus Tomlinson's inspection report, that she had repaired the cracks in the foundation merely 2 days before his inspection, that she had had water in her basement, or that the foundation had moved.

A seller of real property has an affirmative duty to be honest on its disclosure statement. When a seller is untruthful about material facts in its disclosure statement, the material fact is not discover-

able in a reasonable inspection, and the seller does not correct the untruth before closing, the buyer's signature on the disclosure statement does not constitute a waiver of the seller's untruths. The grant of summary judgment was in error, and this case is reversed and remanded for further proceedings.

### Equal Protection

Osterhaus next argues that the district court's reliance on *McLellan* denies him his rights by disregarding the express contractual provisions contained in the contract. Osterhaus believes this deprived him of the equal protection of the law, as the district court arbitrarily enforced "implied" contractual rights while ignoring other rights expressly given under the contract.

The concept of equal protection of the law is one which emphasizes disparity in treatment between classes of individuals whose situations are arguably indistinguishable. *Barrett v. U.S.D. No. 259*, 272 Kan. 250, 255-56, 32 P.3d 1156 (2001).

In the instant case, we struggle to see how any concept of equal protection would come into play. There is no state actor, no statute, and no government entity involved in this private real estate transaction. There is no equal protection violation, and the district court's decision on this issue is affirmed.

### Consumer Protection Act Claim

Osterhaus claims that Toth, Schunk, and TopPros violated the KCPA.

The KCPA is applicable to a real estate transaction. See *Hoffman v. Haug*, 242 Kan. 867, 872-73, 752 P.2d 124 (1988). However, the question here is whether the facts of this case constitute a violation of the KCPA. The district court's order only stated that "[a]s Osterhaus could not justifiably rely upon Toth's representations, he cannot be aggrieved by Toth's purported violations of the KCPA . . . . Thus, Osterhaus cannot be an aggrieved consumer." Because we find that Osterhaus' signature on the buyer's acknowledgment and agreement of Toth's disclosure statement did not constitute a waiver of Toth's material untruths and omissions, sum-

mary judgment on this issue was in error, and the KCPA issue is remanded to the district court for further proceedings.

### Brokerage Relationships in Real Estate Transactions Act

Osterhaus claims that Toth, Schunk, and TopPros violated the Brokerage Relationships in Real Estate Transactions Act (BRRETA), K.S.A. 58-30,101 *et seq.*, by failing to disclose Tomlinson's inspection report and that epoxy had been put in the foundation cracks just 2 days before Osterhaus' inspection.

Schunk knew that Toth had not been truthful on her disclosure statement. There is a question of fact as to which facts he knew were not truthful, when he discovered the untruths, and whether these were material facts. A seller's agent "shall not disclose any confidential information about the client unless disclosure is required by statute or rule and regulation or failure to disclose the information would constitute fraudulent misrepresentation." K.S.A. 58-30,106(c). The district court granted summary judgment on this issue by ruling that Schunk had no duty to disclose major cracking since Osterhaus' inspection disclosed cracking; however, it did not address the nondisclosure of Toth's untruthfulness or the nondisclosure of Tomlinson's inspection report. The district court was in error in granting summary judgment on these issues; therefore, the case is remanded to the district court for further proceedings.

### Fraud, Fraud through Silence, and Negligent Misrepresentations

Osterhaus next argues that the *McLellan* decision violates public policy by protecting a party against liability for deceptive acts, deceptive omissions, negligent misrepresentations, and deliberate fraud. Osterhaus specifically contends that it is against the policy of the State of Kansas to allow a party to contract away liability for fraud.

Generally, unless against public policy, a contract exempting liability will be enforced; however, it will be enforced very strictly. The law does not look with favor on provisions which relieve one from liability for his or her own fault or wrongs. It is well settled

that the law will not sustain a covenant of immunity which protects against fraud or relieves one of a duty imposed by law for the public benefit. *Belger Cartage Serv., Inc. v. Holland Constr. Co.*, 224 Kan. 320, 329, 582 P.2d 1111 (1978).

The existence of fraud is normally a question of fact. Our standard of review is to determine whether the district court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the district court's conclusions of law. *Brennan*, 37 Kan. App. 2d at 378. Actionable fraud may be based on an affirmative misrepresentation made as to existing and material facts, or upon a suppression of facts, which the party is under a legal or equitable obligation to communicate. See *Broberg v. Boling*, 183 Kan. 627, 331 P.2d 570 (1958).

The district court granted summary judgment by finding that Osterhaus waived his right to rely on Toth's representations on her disclosure statement when he signed the buyer's acknowledgment and agreement. The district court also noted that Osterhaus' inspection revealed "major cracking" in the basement wall.

Fraud by silence against one selling real estate requires the following elements: (1) the seller had knowledge of *material* facts which the buyer did not have and which the buyer could not have discovered by the exercise of reasonable diligence; (2) the seller was under an obligation to communicate the material facts to the buyer; (3) the seller intentionally failed to communicate the material facts to the buyer; (4) the buyer justifiably relied on the seller to communicate the material facts; and (5) the buyer sustained damages as a result of the seller's failure to communicate the material facts to the buyer. *McLellan*, 36 Kan. App. 2d 1, Syl. ¶ 5.

In *Katzenmeier* and this case, the sellers stated on their disclosure statements that there had been no water leakage in their buildings even though they knew otherwise. In *Brennan*, as in Osterhaus' case, the sellers were aware of prior inspections which revealed leakage and foundation problems that were not disclosed to the buyers. The *Brennan* court held that the district court erred in granting summary judgment to the sellers on the fraud by silence issue and reversed and remanded the case to the district court. In determining whether Toth, Schunk, or TopPros had knowledge of

water leakage, and whether Tomlinson's report was disclosed to Osterhaus or his realtor, there are disputed, material issues of fact relating to fraud for a jury's decision, not summary judgment. Lenci testified that she never received Tomlinson's inspection report or the invoice for Marsee's repairs. The district court's grant of summary judgment as to these issues is reversed and remanded to the district court for further proceedings.

## Disclosure Statement and Toth's Competency

Osterhaus claims that the district court's interpretation of the buyer's acknowledgment and agreement was erroneous because it vitiated the entire intent of the seller's disclosure statement.

It is undisputed that Toth did not truthfully answer several items on her seller's disclosure statement. She had an engineer inspect the property after she bought it and was told the foundation had moved. She also had water in the basement and had the former owner go to her house to witness that fact. She had answered "no" relating to questions about these issues on her disclosure statement. Toth did not amend her disclosure statement after receiving Tomlinson's inspection report and the cancellation of his contract. The repairs suggested by Schunk were done after Osterhaus made an offer on the house but before Osterhaus' inspection. Toth did not disclose to Osterhaus the repairs that were made. There is also a question of whether Schunk disclosed the repairs. This is a disputed material issue of fact, and this issue is remanded to the district court for further proceedings.

Osterhaus also raises an issue of Toth's competency. Osterhaus alleges that the district court should have conducted proceedings to determine Toth's mental condition, *i.e.*, whether her condition led her to deliberately conceal facts or whether it was an attempt to defraud Osterhaus.

The record on appeal contains a document dated September 23, 2002, that is signed by a physician which states that Toth is incapacitated and lacks the ability to handle her own financial affairs or make financial decisions. Toth argued in her motion for summary judgment that she is suffering from mild to moderate dementia. If that is the case, she may have been incapacitated at the

time she signed the disclosure statement and contract for sale and, therefore, would not have had the capacity to enter into the contract. This raises another disputed material issue of fact, and this issue is reversed and remanded to the district court for further proceedings.

### *Motion to Amend*

Osterhaus filed a motion to amend his petition in October 2006, alleging that facts learned during discovery warranted amending his petition to include a cause of action for rescission, civil conspiracy, and violations of the real estate code. Osterhaus also requested a claim for punitive damages.

The district court never ruled on Osterhaus' motion. On appeal, Osterhaus contends the district court erred by silently denying the motion without making the appropriate findings of fact and conclusions of law. We agree. This issue is reversed and remanded to the district court for further proceedings.

We affirm the district court's decision on the equal protection issue. We reverse the district court's grant of summary judgment to Toth, Schunk, and TopPros on all remaining issues and remand the case to the district court for further proceedings.

LEBEN, J., dissenting in part: I dissent from the majority's ruling on all but one issue for the reasons stated in my concurring opinion in *Katzenmeier v. Oppenlander*, 39 Kan. App. 2d 259, 268-72, 178 P.3d 66 (2008). Including *Katzenmeier*, our court has published three decisions within the past 2 years that all conclude the same seller's disclosure statement now given to Osterhaus could not form the basis for a misrepresentation claim. These prior decisions require that we affirm the district court in its grant of summary judgment for defendants on all claims except the one arising against the real-estate agent under the Brokerage Relationships in Real Estate Transactions Act (BRRETA).

As I explained in my *Katzenmeier* concurrence, I believe that *McLellan v. Raines*, 36 Kan. App. 2d 1, 140 P.3d 1034 (2006), *Brennan v. Kunzle*, 37 Kan. App. 2d 365, 154 P.3d 1094, *rev. denied* 284 Kan. 945 (2007), and *Katzenmeier* were all wrongly de-

cided. The majority today has now agreed with that conclusion. If I had been writing on a clean slate in *Katzenmeier*, I would have ruled differently. The same is true today.

Since the issuance of *McLellan*, the first of these published opinions, hundreds—if not thousands—of real-estate transactions have used this same disclosure-statement language. Toth's disclosure statement was filled in on a standard document that notes on its face that the Johnson County Board of Realtors approved it. This form's widespread use by real-estate agents has resulted so far in four appellate decisions involving the same language—three from Johnson County and one (*Katzenmeier*) from Riley County. The public develops reasonable expectations based upon the law as we have already explained it. With three published decisions of our court all in agreement on this issue, I do not believe it is appropriate to now change course. See *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 714-15, 89 P.3d 573 (2004) (respect for precedent is greatest in cases involving property and contract rights based on the reliance interests at stake); *Tate v. Showboat Marina Casino Partnership*, 431 F.3d 580, 582-83 (7th Cir. 2005). The Kansas Supreme Court is the appropriate body to consider these issues, and I hope that it will review the matter and provide guidance on the legal effect of this disclosure form.

The claims under the Kansas Consumer Protection Act, like the fraud claims, are squarely based upon the seller's disclosure statement. In *McLellan*, the court held that a party who signed the buyer's acknowledgment on that form could not be an "aggrieved consumer" subject to coverage under the Kansas Consumer Protection Act. 36 Kan. App. 2d at 17-18. I would affirm the district court's grant of summary judgment for defendants on claims under the Kansas Consumer Protection Act based on the court's precedent in *McLellan*. Though I disagree with that precedent, I believe our court should follow it.

As for Osterhaus' claims against the seller's real-estate agent for violation of BRRETA, the *McLellan* court's ruling under this statute is not fully applicable here. In *McLellan*, the court found that the real-estate agent had no knowledge of the water leakage, could not claim reliance, and that the claim arose out of the inspection,

for which there was no BRRETA claim. 36 Kan. App. 2d at 16-17. But Toth's claim is that Schunk, the real-estate agent here, failed to disclose an inspection report and repairs done just before Toth's inspection. These facts sufficiently differ from those presented in *McLellan* so that a claim may arise under K.S.A. 58-30,106(d)(4), which requires that the seller's agent disclose facts known by the agent "that were omitted from or contradict any information included in a written report" otherwise provided to the buyer. See *Fitzmorris v. Demas*, 34 Kan. App. 2d 267, 116 P.3d 764 (2005). I therefore agree with the majority that the district court's decision on the BRRETA claim should be reversed and that claim should be remanded for further proceedings.