(75 P.3d 266)
No. 89,597

JAMES E. STARR, *Plaintiff*, v. UNION PACIFIC RAILROAD COMPANY, *Appellee/Cross-appellant*, and ARCHER DANIELS MIDLAND CORPORATION, *Appellant/Cross-appellee*.

Opinion filed August 29, 2003.

*Stanley N. Wilkins,* and *David D. Burkhead,* of Slagle, Bernard & Gorman, P.C., of Kansas City, Missouri, for appellant/cross-appellee.

*James M. Yeretsky, Gregory F. Maher,* and *Michael A. Preston,* of Yeretsky & Maher, L.L.C., of Overland Park, for appellee/cross-appellant.

Before JOHNSON, P.J., GREENE, J., and DAVID W. KENNEDY, District Judge, assigned.

GREENE, J.: Archer Daniels Midland Corporation (ADM) appeals the district court's grant of summary judgment in favor of Union Pacific Railroad Company (UP) on its claims that ADM should indemnify UP pursuant to contract for one half of the cost of a personal injury settlement with a railroad employee, James Starr, who was injured on ADM property. ADM also appeals the district court's award of one half of ADM's attorney fees and costs incurred in defending Starr's claims. UP cross-appeals, claiming indemnity for all amounts paid as well as all attorney fees and costs. We affirm in part, reverse in part, and remand for trial of disputed factual issues.

## Factual Overview

In July 1962, the predecessors of UP and ADM executed a side-track agreement (Agreement) generally governing the rights and obligations of the parties in providing rail services to an elevator facility in Wolcott, Kansas. The Agreement contained indemnity provisions that are the basis for the contract claims herein.

Starr, a conductor employed by UP, was working between the tracks on ADM property on August 27, 1998. In order to avoid a pool of rainwater that had collected during rainstorms that night, Starr stepped onto a ballast (the gravel walkway between tracks), slipped and fell, and injured his knee. Starr filed a claim pursuant

to the Federal Employer's Liability Act (FELA), see 45 U.S.C. § 51 *et seq.* (2000), against UP for his injury. He later joined ADM as a defendant.

Starr settled with UP for $425,000 on March 1, 2001, and dismissed his claims against UP and ADM with prejudice. Remaining were cross-claims of both UP and ADM based on the Agreement. Both UP and ADM filed motions for summary judgment. The district court construed the Agreement and determined that UP was entitled to indemnity from ADM for one half of the settlement amount and one half of the attorney fees and costs incurred in defending Starr's claim, for a total judgment of $230,400.

ADM and UP appeal the district court's decision.

### *Standard of Review*

On appeal of summary judgment, we apply the same rules applicable in the district court, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be reversed. *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000). To the extent that this appeal frames issues of contract interpretation, our review is unlimited. Regardless of the construction given a written contract by the district court, an appellate court may construe a written contract and determine its legal effect. *Alexander v. Everhart*, 27 Kan. App. 2d 897, 901, 7 P.3d 1282, *rev. denied* 270 Kan. 897 (2000). The issue of whether a contract is ambiguous is also a matter of law, and our review is unlimited. *Investcorp, L.P. v. Simpson Investment Co., L.C.*, 267 Kan. 840, 847, 983 P.2d 265 (1999).

### *Did the District Court Err in Concluding that the Agreement was not Ambiguous as to "the Switch" and that the Plaintiff was Injured Within the Area Described by the Agreement?*

ADM initially claims that the Agreement was ambiguous in describing the area where indemnification is triggered for injuries to railroad employees and that UP's inability to show that the incident occurred within the contemplated area was fatal to its claim for indemnity. The issue is whether the incident occurred on or about "the Switch" as defined by the Agreement.

Paragraph 1 of the Agreement states:

"1. Shipper shall be served by two certain proposed tracks, Track 'A' and Track 'B', 2330 feet long and 1945 feet long, more or less, respectively, and appurtenances, including roadway, herein called 'Switch.' Switch is located near Wolcott, Leavenworth County, Kansas, approximately where shown by green lines on the undersigned Carrier's white print, map number D-3022, dated at Kansas City, Missouri, June 4, 1962, marked Exhibit 'A', attached hereto as part hereof. Switch also means, except as respects cost, ownership and maintenance, any addition to or extension of Switch."

Since the map attached to the Agreement reflected no green lines, and since no such "green-lined" map was produced during discovery, ADM claims that this contract error is fatal to UP's claim for indemnity.

The district court ruled against ADM on this issue, concluding:

"The 1962 agreement, and specifically paragraphs 4 and 11 of the 1962 agreement, is not ambiguous.

"The 1962 agreement describes the area of the Switch depicted in an attached exhibit marked by green lines. Neither the UP nor ADM have provided that exhibit with the green lines. The court finds the 1962 agreement does identify Track A and Track B and that Starr fell between those two (2) tracks, which is within the Switch as described by the language in the 1962 agreement."

The parties conceded in oral argument that there were no facts known that might assist the court in construing the contract if it were found to be ambiguous, so this issue is one of pure contract construction.

The cardinal rule of contract construction requires courts to determine the parties' intent from the four corners of an instrument by construing all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision, and reasonable rather than unreasonable interpretations are favored. *Lauck Oil Co. v. Breitenbach*, 20 Kan. App. 2d 877, Syl. ¶ 2, 893 P.2d 286 (1995). Errors in contracts, which do not create such inconsistency that the overall intent of the parties cannot be determined from the four corners of the instrument, do not result in an ambiguous contract but merely create an inconsistency subject to interpretation by the court considering the contract as a whole. See *Brown v. Lang*, 234 Kan. 610, 614-15, 675 P.2d 842

(1984). Where an extraneous writing is incorporated by reference, it becomes a part of the contract only so far as to effectuate the specific purpose intended. *Cuthbert v. Richey*, 119 Kan. 233, 235, 237 Pac. 883 (1925); see *Caldwell-Baker Co. v. Southern Illinois Railcar*, 225 F. Supp. 2d 1243, 1251 (D. Kan. 2002).

Scrutinizing the language of the Agreement, we agree with the district court that there is no ambiguity in the specification of the Switch, despite the absence of a green-lined map. In fact, we believe that the Switch is adequately defined within paragraph 1 of the Agreement and that the parties intended only to embellish or illustrate this definition by the map, which would "approximately" display the area already carefully described by the language of paragraph 1. We are satisfied that the contract language alone clearly reflects an intention of the parties to consider as within the Switch: (i) Tracks A and B; (ii) all "appurtenances" to said Tracks; (iii) the "roadway"; and (iv) any "addition to or extension" of same. Inasmuch as the plaintiff was injured in the area between Tracks A and B, we do not believe that any reasonable interpretation of the Agreement could consider the place of injury as somehow beyond the Switch. Moreover, any lack of precision in the definition of the Switch becomes particularly immaterial to the claims herein because the operative indemnity provision is expressly triggered by "loss, damage or injury . . . while on *or about* the Switch." We affirm the district court on this issue.

*Did the District Court Err in Concluding that No Genuine Issue of Material Fact Precluded the Legal Conclusion that Starr's Injuries Resulted from an "Act or Omission" of ADM, as that Phrase is Employed in Paragraph 11 of the Agreement?*

Paragraph 11 of the Agreement provides, *inter alia*:

"Shipper also agrees to indemnify and hold harmless Carrier for loss, damage or injury from any act or omission of Shipper, Shipper's employees or agents, to the person or property of the parties hereto and their employees and to the person or property of any other person or corporation, while on or about Switch; and, except as otherwise provided in this agreement, if any claim or liability shall arise from joint or concurring negligence of both parties hereto, it shall be borne by them equally."

UP claims that since Starr brought his suit pursuant to FELA, ADM's liability for indemnification should not be based upon the laws of torts requiring common-law negligence but rather should be based upon the liability provisions of FELA, requiring only that an act or omission of ADM contributed to providing an unsafe work place for Starr. ADM disputes this assertion, claiming that it should not be liable absent negligent acts causing injury to plaintiff. The district court apparently embraced UP's position, holding that "as an owner of the premises where Starr fell, ADM had a like duty to be aware of and control any kind of action that could cause injury to Starr." We must resolve this threshold question of contract construction prior to any analysis of the uncontroverted facts.

In support of its argument, UP cites federal case law including *Chicago, R.I. & P.R. Co. v. Dobry Flour Mills,* 211 F. 2d 785 (10th Cir. 1954), where the court construed a similar indemnity provision, holding that in a railroad sidetrack agreement with indemnity provisions, absent specific language to the contrary, the "acts or omissions" triggering indemnification are not the common-law duties of the property owner to the injured employee but rather the acts of the property owner that resulted in liability of the railroad under FELA. 211 F. 2d at 788. The United States Court of Appeals for the Eighth Circuit explained this attenuated liability standard as follows:

"The obvious purpose of the agreement is to provide for indemnification of the railroad when the industry's act or omission violates the railroad's nondelegable duty to furnish a safe place for its employees to work." *Burlington Northern, Inc. v. Hughes Bros., Inc.,* 671 F. 2d 279, 284 (8th Cir. 1982).

The result of this construction would be to place ADM in the position of the railroad in defending a FELA claim.

Our court has apparently embraced this rule in *Knowles v. Burlington Northern R.R. Co.,* 18 Kan. App. 2d 608, 613, 856 P.2d 1352, *rev. denied* 254 Kan. 1007 (1993). Although the precise language of the indemnity contract at issue in *Knowles* is unclear, the court held:

"[W]e note that the issue is controlled by the indemnity provision of the contract between Burlington and Asplundh. Under the provisions of the contract, Asplundh's liability is to be determined under the law which would make Burlington

liable to the plaintiff and not upon Asplundh's common-law liability. *Chicago, R.I. & P.R. Co. v. Dobry Flour Mills,* 211 F.2d 785, 788 (10th Cir.), *cert. denied* 348 U.S. 832 (1954). See *Missouri Pac. R. Co. v. International Paper Co.,* 618 F.2d 492 (8th Cir. 1980), and *Southern Ry. Co. v. Georgia Kraft Co.,* 823 F.2d 478 (11th Cir. 1987). In this case, Asplundh's liability to Burlington must be determined according to FELA."

Although we recognize that the parties could have been more clear of any such intention in their contract, we are not inclined to distinguish or depart from *Knowles,* and we conclude that the district court did not err in construing a portion of paragraph 11 of the Agreement with this attenuated standard of liability. Notwithstanding this conclusion as to the phrase "act or omission" for purposes of full indemnification by ADM, the district court upon remand should take care in instructing the jury, since any sharing of liability pursuant to paragraph 11 of the Agreement must be premised upon "joint or concurring negligence of both parties," apparently intending no attenuated standard for this purpose. Paragraph 11 of the Agreement governs at least three scenarios of indemnity, and the jury will likely be required to address both the attenuated liability and the negligence of both parties in order for the court to properly apply the rather confusing provisions.

We turn to an analysis of the uncontroverted facts with this contractual standard firmly in mind. The district court concluded that:

"[T]he act or omission engaged in by ADM in violation of paragraph 11 of the 1962 agreement was in allowing water, even for a short period of time, to pool between the tracks.

". . . ADM's act of permitting water to pool between the tracks where Starr was working contributed to Starr's injuries, resulting in joint or concurring negligence of the parties with respect to Starr's FELA claim."

When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Patterson v. Brouhard,* 246 Kan. 700, 702, 792 P.2d 983 (1990). Moreover, where reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Barbara Oil Co. v. Kansas Gas Supply Corp.,* 250 Kan. 438, 445, 827 P. 2d 24 (1992). We note in particular that ADM controverted

material facts regarding the precise area, extent, and frequency of pooling of water, and submitted an affidavit from its expert Brookings that created a material fact dispute as to causation. In this regard, this case is not dissimilar to *Bethlehem Steel Corp. v. Consolidated Rail*, 740 N.E.2d 900, 907 (Ind. App. 2000), where the court reversed summary judgment based on an indemnity clause in a sidetrack agreement because there were material issues of fact relating to causation.

Even though we have concluded that the standard of proof required may be minimal under these circumstances, we find that ADM successfully demonstrated that a genuine issue of material fact precluded judgment as a matter of law under paragraph 11 of the Agreement. We reverse the district court and remand for trial the issue of whether Starr's injuries were caused by any act or omission of ADM (as defined by FELA) or were caused by the joint or concurring negligence of both parties.

*Did the District Court Err in Awarding UP One half*
*of its Fees and Costs Incurred in Defending Starr's Claims?*

The district court awarded UP one half of its fees and costs incurred in defending Starr's claims, holding:

"That paragraph 11 of the 1962 agreement provides that the claim or liability should be shared equally and, therefore, one-half of the attorney's fees incurred by the UP in the defense of Starr's FELA claim is assessed against ADM."

Kansas courts have never faced squarely whether a broadly worded indemnity obligation supports liability for the indemnitee's fees and costs. We recognize that federal courts in Kansas have addressed the issue but with inconsistent results. Compare *Missouri Pac. R. Co. v. Kansas Gas and Elec. Co.*, 862 F.2d 796, 799 (10th Cir. 1988) to *National Minority Supplier Dev. v. First Nat. Bank*, 83 F. Supp. 2d 1200, 1205-06 (D. Kan. 1999). For purposes of this appeal, however, we conclude that the parties' employment of indemnification language expressly referencing attorney fees in paragraph 4 of the Agreement, while employing only broad general indemnification language with no such reference in paragraph 11 of the same Agreement, must be construed as intending no inclusion of attorney fees in the latter.

Paragraph 4 of the Agreement reflects an indemnity obligation to "defend, indemnify and save harmless the Carrier from and against any and all liability, suits, claims, damages, costs (including attorney fees), losses, outlays, and expenses . . .," whereas paragraph 11 of the Agreement reflects an indemnity obligation to "indemnify and hold harmless Carrier for loss, damage or injury . . . ." Applying a variation of the maxim *expressio unius est exclusio alterius,* we conclude that the parties did not intend for the indemnification obligation in paragraph 11 to include fees. See Black's Law Dictionary 1635 (7th ed. 1999); *State v. McCallum,* 21 Kan. App. 2d 40, 46, 895 P.2d 1258, *rev. denied* 258 Kan. 862 (1995); *Ward v. Smith,* 140 W. Va. 791, 808, 86 S.E.2d 539 (1955). Obviously, the parties knew precisely how to draft an indemnification obligation that included attorney fees; their failure to employ such language in another such provision within the same agreement manifests an intent to the contrary.

The district court's award of one half of UP's attorney fees and costs is reversed.

### *Did the District Court Err in Granting Judgment Against UP on its Claims under Paragraph 4 of the Agreement?*

In its cross-appeal, UP complains that the district court erred in granting judgment against UP on its claims for full indemnity under paragraph 4 of the Agreement. This paragraph provides:

"4. Except as otherwise provided in this agreement, Shipper shall not erect or maintain, or allow to be erected or maintained, any building, structure or fixture, or place or store, or allow to be placed or stored material, equipment or obstruction of any kind, over or adjacent to Switch at distances less than those prescribed by competent public authority, and in no event shall any such building, structure, fixture, material, equipment or obstruction be erected, maintained, placed or stored at a height less than twenty-five feet above nearer rail, or at a distance less than eight and one-half feet from the center line of Switch. . . . Shipper assumes full responsibility for, and shall defend, indemnify and save harmless the Carrier from and against any and all liability, suits, claims, damages, costs (including attorney fees), losses, outlays, and expenses in any manner caused by, arising out of or connected with the failure or refusal of Shipper to comply with, observe or perform any of the provisions of this paragraph 4, notwithstanding any possible negligence (whether sole, concurrent or otherwise) on the part of Carrier, its agents or employees."

UP claims that the pooling of water between tracks constitutes an "obstruction" so as to trigger liability under this paragraph. The district court refused to apply paragraph 4 of the Agreement, holding:

"4. That a pooling of water within the Switch is not an obstruction, pursuant to the terms of paragraph 4 of the 1962 agreement. An obstruction, as provided in paragraph 4 requires something that ADM actively created and would more permanently impede the path of a train.

"5. That paragraph 4 of the 1962 agreement is inapplicable to Starr's FELA claim and ADM's cross Motion for Summary Judgment with respect to the application of paragraph 4 to the UP's claim of indemnification is granted."

Although UP cites case law from other jurisdictions construing and applying the term "obstruction," none of these cases holds that an obstruction for purposes of a railroad sidetrack agreement may be created by the pooling of water between tracks, where there is shown no impediment to the operation of trains. Our courts have consistently embraced the general rule that contract terms should be given their plain, general, and common meaning. *Darby v. Keeran*, 211 Kan. 133, Syl. ¶ 2, 505 P.2d 710 (1973).

We affirm the district court on this issue and direct that remand proceedings be limited to paragraph 11 of the Agreement.

Affirmed in part, reversed in part, and remanded with directions.