(298 P.3d 358)
No. 107,970

MATT KINCAID and JULIE KINCAID, *Appellants*, v. DAVID DESS, *et al.*, *Appellees*.

Opinion filed March 8, 2013.

*Louis C. Accurso*, of The Accurso Law Firm, of Kansas City, Missouri, for appellants.

*R. Scott Beeler*, of Lathrop & Gage LLP, of Overland Park, for appellees.

Before ARNOLD-BURGER, P.J., GREEN, J., and HEBERT, S.J.

GREEN, J.: Matt Kincaid and Julie Kincaid appeal from a summary judgment granted in favor of David Dess and Sandra Dess involving the Kincaids' breach of contract, fraud, negligent misrepresentation, civil conspiracy, and rescission claims. The Kincaids purchased a house from Sirva Relocation LLC (Sirva) for approximately $1,040,000. The bases of the Kincaids' claims involve the alleged failure of the Desses to disclose the true condition of their home before they sold it to Sirva. Nevertheless, the Desses moved for summary judgment. The Desses sought dismissal of the action on grounds that the Kincaids purchased the house from Sirva so there was no privity between the Desses and the Kincaids. The Desses maintained that the Kincaids' claims for fraud and negligent misrepresentation, breach of contract, and rescission should fail because of a lack of privity. The Desses further maintained that the Kincaids' civil conspiracy claim should fail because the Kincaids failed to show a meeting of the minds. The trial court agreed and granted summary judgment in favor of the Desses on all of the Kincaids' claims.

On appeal, the Kincaids contend that the trial court erred in granting summary judgment on their breach of contract, fraud, and negligent misrepresentation claims. We agree. The Kincaids further contend that the trial court erred in granting summary judgment on their civil conspiracy and rescission claims. We disagree. Accordingly, we reverse and remand for trial on the Kincaids' breach of contract, fraud, and negligent misrepresentation claims. We affirm the trial court's grant of summary judgment in favor of the Desses on the Kincaids' civil conspiracy and rescission claims.

The Desses entered into an option to purchase contract in the spring of 2007 with Sirva which gave Sirva the exclusive right to list the Desses' house for sale. The Kincaids entered into a real estate contract with Sirva to purchase the Desses' home.

As part of their contract with Sirva, the Desses completed two separate "Seller's Disclosure" statements, one was the local form (local disclosure statement) and one was Sirva's form (Sirva disclosure statement). Sirva then provided these disclosure statements

to the Kincaids. The Sirva disclosure statement indicated that the type of exterior material on the home was "unknown." The Desses also denied any knowledge of mold or mildew or any dampness or leaks in the walls. The Desses further denied that they were aware of any wood rot or any other conditions that might adversely affect the value or desirability of their home.

The Kincaids signed a rider to the sales agreement with Sirva. The rider contained numerous clauses which explained that the disclosure statements were completed by the Desses and that Sirva was not making any representations about the condition of the property. The rider stated the following:

"Buyer must acknowledge receipt of the disclosure forms identified below. Said forms are informational only and represent only the opinions of the individuals or firms which prepared them and SIRVA makes no representation or recommendation concerning said reports. Buyer further acknowledges that the home owner disclosure forms were completed by the owner of the Property previous to SIRVA, that said disclosures fulfill any obligation of SIRVA to disclose conditions of the Property to Buyer and that SIRVA may not complete an independent investigation and/or disclosure for the Property."

The rider also stated the following:

"It is acknowledged that SIRVA has never occupied the property and, as such, the Property is being sold in 'as is' condition to the maximum extent allowed by law. Neither Seller or any of its agents make any representations concerning the Property, including but not limited to, representations regarding the size of the buildings and improvements, the presence or absence of toxic or hazardous substances, or the presence or absence of any encroachments or unrecorded easements."

The rider further stated the following:

"SIRVA makes no representations or warranties of any sort whatsoever regarding the Property, its condition, value or surrounds and may not be held liable or responsible for any damages or liability to Buyer or any other person or entity. Buyer is agreeing to fully rely on its right to inspections, tests and surveys granted herein to discover any undesirable or latent conditions regarding this property, and acknowledges that Sirva has made no representations thereon upon which Buyer may rely. The provisions herein shall survive closing and delivery of the deed. The closing of this transaction shall constitute buyer's full and complete acceptance and release of claims for all conditions and inspection matters herein."

The Kincaids had an inspection done on the home which informed the Kincaids that the exterior of the property did not consist of an exterior insulation and finish system (EIFS), also known as synthetic stucco. EIFS is a multi-layered exterior finish system that looks similar to traditional stucco but is soft and sounds hallow when tapped. The problem with EIFS is when moisture is present behind the covering it can become trapped behind the layers and can lead to wood rot. The Kincaids testified that the Desses' realtor assured them that the exterior of the home was not EIFS. The fact that the exterior of the home was not EIFS was particularly important to the Kincaids because they were aware of the problems that can arise with an EIFS exterior if it is not installed properly. The Kincaids testified that they would not have purchased the home if they knew that the exterior was EIFS. As a result of the inspection, the Kincaids requested that some repairs be made before they would close on the house. The Desses paid for and completed the requested repairs. The Kincaids closed on the house on August 9, 2007.

In September 2007, 1 month after closing on the house, the Kincaids discovered numerous defects that had not been disclosed by the Desses. The Kincaids discovered (1) that the exterior of the home was EIFS; (2) that the property had prior water damage; (3) that some of the exterior and interior walls had dampness problems; (4) that many windows were defective and rotten; and (5) that the home was contaminated with mold. As a result of those defects, the Kincaids were not allowed to live in the home for a year while the defects were being repaired.

In April 2009, the Kincaids sued the Desses, Reece & Nichols Realtors, Inc., and Tricia Wolfe, the Desses' realtor, for breach of contract, fraud and negligent misrepresentation, and civil conspiracy. The Kincaids did not include Sirva in the lawsuit. The Kincaids sought damages of $350,000 to pay for the cost to repair the property, the diminution in value to the property, and the cost of additional living expenses during the repairs.

The Desses moved for summary judgment on all counts. On November 17, 2010, the trial court issued a memorandum opinion granting summary judgment in favor of the Desses on the claims

of breach of contract and fraud and negligent misrepresentation. The trial court held that there was a lack of privity between the Kincaids and the Desses, and therefore, the Kincaids' breach of contract claim failed. The trial court further held that the Kincaids failed to come forward with any evidence that they reasonably relied on any statements made by the Desses. The trial court allowed the claims for civil conspiracy and rescission to proceed to discovery.

On January 10, 2011, the Desses filed a second motion for summary judgment. The Desses filed an amended motion for summary judgment on October 17, 2011, which asked the court to dismiss the remaining claims. After a hearing, the trial court granted summary judgment in favor of the Desses on the remaining claims. Only the Dess defendants are involved in this appeal.

*Standard of Review*

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 330, 277 P.3d 1062 (2012).

Additionally, for this court to determine whether the trial court erred, it must interpret the sales contract. The legal effect of a written instrument is a question of law. It may be construed and its legal effect determined by the appellate court regardless of the construction made by the trial court. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011). "The primary rule for interpreting

written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the contract language without applying rules of construction. [Citation omitted.]" *Carrothers Constr. Co. v. City of South Hutchinson*, 288 Kan. 743, 751, 207 P.3d 231 (2009).

*Did the trial court err in granting summary judgment on the Kincaids' breach of contract claim?*

In granting the Desses' motion for summary judgment on the breach of contract claim, the trial court ruled that privity is essential to maintain an action on a contract and that such privity did not exist between the Kincaids and the Desses in the residential real estate contract.

On appeal, the Kincaids make numerous arguments that privity did exist between them and the Desses. For example, the Kincaids argued: (1) that the facts of the case alone established privity; (2) that as a matter of law the signed disclosure statements established privity; (3) that the disclosure statements were incorporated by reference to the contract and therefore established privity; and (4) that privity was established because they were intended third-party beneficiaries. We will first address the third-party beneficiary argument.

### Third-Party Beneficiary

The Kincaids argue that the trial court erred in granting the Desses' motion for summary judgment on their breach of contract claim because they are intended third-party beneficiaries of the contract of sale between Sirva and the Desses under the identifiable class called prospective buyers. The Desses respond that the Kincaids are merely incidental third-party beneficiaries and that they do not have the necessary privity of contract.

In the present case, the trial court granted the Desses' motion for summary judgment because it ruled the Kincaids did not have privity of contract, and therefore, no standing to sue. Standing is a requirement for the court to have jurisdiction to hear the case, so the existence of standing is a question of law over which an appellate court's scope of review is unlimited. *Board of Sumner County*

*Comm'rs v. Bremby*, 286 Kan. 745, 751, 189 P.3d 494 (2008). Moreover, a lack of standing was based on the residential real estate contract, and the interpretation and legal effect of written instruments are matters of law over which appellate courts exercise unlimited review. *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 32, 200 P.3d 419 (2009). Regardless of a trial court's construction of a written contract, an appellate court may construe it and determine its legal effect. *City of Arkansas City v. Bruton*, 284 Kan. 815, 828-29, 166 P.3d 992 (2007).

Here, privity turns on whether Sirva and the Desses intended to create an identifiable class of third-party beneficiaries, called prospective buyers, whom Sirva and the Desses intended to benefit by the contract of sale and to which the Kincaids belong.

To determine whether a particular person is an intended beneficiary of a contract, the court applies the general rules for construction of contracts. *Gray v. Manhattan Med. Center, Inc.*, 28 Kan. App. 2d 572, 580-81, 18 P.3d 291 (2001). When interpreting written contracts, the contract should not be interpreted by isolating one particular sentence or provision, but by construing and considering the entire contract. If the terms of the contract are clear, the parties' intent is determined from the contract itself without applying rules of construction. A contract is ambiguous when the words in the contract expressing the intent of the parties may be understood in two or more ways. *Fasse v. Lower Heating & Air Conditioning, Inc.*, 241 Kan. 387, 388-91, 736 P.2d 930 (1987).

Third-party beneficiaries of a contract are divided into intended beneficiaries and incidental beneficiaries, and only intended beneficiaries have standing to sue for damages resulting from the breach of a contract. See *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 793, 107 P.3d 1219 (2005) (finding the State was not an intended third-party beneficiary of a subcontract). The burden of establishing standing to bring suit as a third-party beneficiary rests with the party asserting it. See *Stovall*, 278 Kan. at 793; See also *Byers v. Snyder*, 44 Kan. App. 2d 380, 386-87, 237 P.3d 1258 (2010).

Before a third party, in this case the Kincaids, may enforce a contract from which they would benefit, the Kincaids must show

the existence of some provision in the contract that operates to their benefit. A third-party beneficiary does not need to be personally named in the contract to have standing, as long as he or she is a member of a designated class or identifiable as a benefitted person. *Hartford Fire Ins. Co. v. Western Fire Ins. Co.*, 226 Kan. 197, 210, 597 P.2d 622 (1979).

In the case before us, the trial court incorrectly held that the third-party beneficiary needed to be specifically named:

"Plaintiffs reference no provisions in any of the several contracts referred to which include a promise or the specific intention to benefit them nor any provisions made directly and primarily for their benefit.

". . . The disclosure statement given to SIRVA signed by the defendants Dess . . . states it is intended to provide full disclosure to potential buyers but that is not the document plaintiffs claim to be third party beneficiaries of and even if it were, the use of 'potential buyers' eliminates any suggestion of an intent to benefit this specific buyer plaintiff."

The Desses support this interpretation, arguing that "there is no reference to Plaintiffs [the Kincaids], or to any other individual potential buyers, whatsoever. Without such stated intent, Plaintiffs cannot sustain any claim under a third-party beneficiary theory as a matter of law."

Nevertheless, as explained earlier, a third-party beneficiary does not need to be personally named in the contract to have standing, as long as he or she is a member of a designated class or identifiable as a benefitted person. See *Hartford Fire Ins. Co.* 226 Kan. at 210; see also Restatement (Second) of Contracts § 308 (1981) ("It is not essential to the creation of a right in an intended beneficiary that he be identified when a contract containing the promise is made."). Thus, it is sufficient that he or she can be identified when performance is due and the promisor fails to perform his or her promise.

As a result, the key inquiry is whether the Kincaids were intended to be benefited by the contract provision in question. Here, the Desses contracted with Sirva to assist in selling their home. In the contract between the Desses and Sirva, the Desses promised Sirva to be liable for any damages for an "action brought by any purchaser from the Buyer [Sirva] relating to . . . the condition of

the Property . . . which the Seller [the Desses] would otherwise be liable to Buyer [Sirva]."

Thus, the Desses are the promisors, the ones who make the promise to be enforced. Sirva is the promisee, the one to whom the promise is made. The Desses agreed to fully disclose all information about the property on a seller's disclosure statement furnished by Sirva. It was further agreed between Sirva and the Desses that Sirva and "other prospective buyers" could rely on the seller's (the Desses') disclosure statement in determining "whether and on what terms to purchase the Property." Although the Kincaids are not a party to the contract between Sirva and the Desses, the Kincaids are intended by both Sirva and the Desses to be the third-party beneficiary of the contract.

In the contract between the Desses and Sirva, the Desses promised to do the following: "Fully disclose all information about the Property on a Seller Disclosure Statement provided by Buyer [Sirva] upon which Buyer and other *prospective buyers may rely* in deciding whether and on what terms to purchase the Property." (Emphasis added.) It was not necessary that the Kincaids be named as third-party beneficiaries when the contract was made between Sirva and the Desses. It was sufficient that the Kincaids were a member of an identified class. Here, the Kincaids were sufficiently described or designated as "other prospective buyers" of the property in question. Thus, the Kincaids are intended by both Sirva and the Desses to be the third-party beneficiaries of the contract and are intended by Sirva and the Desses to have enforceable rights against the Desses, the promisors, under the contract based on their alleged failure to "[f]ully disclose all information about the Property."

*Incorporation by reference*

Next, the Kincaids maintained that the signed disclosure statements formed a contract between the parties and that because the disclosure statements were incorporated by reference into their contract with Sirva, they had privity. To support their argument, the Kincaids relied on this court's decision in *Osterhaus v. Toth*, 39 Kan. App. 2d 999, 187 P.3d 126 (2008), *aff'd* 291 Kan. 759,

arguing that the *Osterhaus* court held that disclosure statements are contracts. The trial court rejected this argument:

"The first argument is that the disclosure statement signed by the Dess defendants March 20, 2007 and by the plaintiffs [Kincaids] April 25, 2007 (Ex. 3 of Kincaids), is a contract between them relying on the authority of *Osterhause* [*sic*] *v. Toth*, 39 Kan. App. 2d 999, 1006, 187 P.3d 126 (2008). The disclosure signed March 20, 2007 and April 25, 2007, referred to is entirely different than the documents relied on in the *Osterhause* [*sic*] case and it contains no language indicating it to be a contract. The plaintiffs [the Kincaids] signed it acknowledging receipt, but nowhere is there language referring to it as a contract or justifying that implication or inference. In addition, of course, it is not the 'contract' sued upon, and cannot provide 'privity' for the contract sued upon."

Clearly, the primary issue here is whether the Kincaids and the Desses have privity of contract. Privity of contract is the connection or relationship which exists between two or more contracting parties. It is essential to the maintenance of a lawsuit based on a contract that there is privity between the plaintiff and the defendant. *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 793, 107 P.3d 1219 (2005).

In this case, the Kincaids further argue that under the rider sales agreement, the disclosure statements provided by the Desses were incorporated into their agreement with Sirva. When a writing is incorporated by reference, it becomes a part of the contract only so far as to effectuate the specific purpose intended. *Starr v. Union Pacific Ry. Co.*, 31 Kan. App. 2d 906, 910, 75 P.3d 266 (2003). The Kincaids argue that the purpose of the disclosure statement was to inform prospective buyers of the conditions of the property. The Kincaids contend that the Desses knew that the disclosure statements would be provided to prospective buyers of their house and knew that the prospective buyers would be relying on the disclosure statements. The Kincaids further maintain that Sirva was simply a "straw man" in the transaction and that the Desses should not be allowed to make false representations in their disclosure statements and then be protected by the "straw man."

Alternatively, the Desses deny that they were a party to the real estate contract between the Kincaids and Sirva. The Desses acknowledge that although the original residential real estate contract

had the Desses listed as the sellers, their name was later crossed out by the Kincaids who then listed Sirva as the sellers of the property. The Desses argue that their disclosure statement was given to Sirva who then provided it to the Kincaids. The Desses maintain that this disclosure statement does not create any contractual relationship between them and the Kincaids. The Desses contend that the Kincaids are simply trying to substitute the Desses into their contract with Sirva because the Kincaids voluntarily waived their right to hold Sirva liable.

To determine the specific purpose of incorporating the disclosure statements, we must interpret the language of the disclosure statements. In reviewing the disclosure statements completed by the Desses, it is readily apparent that the Desses knew: (1) that the disclosure statements would be provided to prospective buyers; (2) that prospective buyers would rely on the information; and (3) that they needed to make an honest effort to fully reveal the information requested.

Additionally, under the Sirva disclosure statement, it is clear that Sirva denies any knowledge of the property and that Sirva cannot be held responsible for the content or accuracy of the disclosure statement. The Sirva disclosure statement states: "Seller(s) [the Desses] agree to indemnify and hold SIRVA Relocation LLC (SIRVA Relocation) harmless from any claim made against SIRVA Relocation regarding conditions of the property, which are not disclosed to SIRVA Relocation herein." This means that the Desses knowingly agreed to be held liable to any claim regarding the conditions of the property based on their disclosure statement.

While the Desses argue that the Kincaids are simply trying to substitute the Desses into their contract with Sirva because they waived the right to sue Sirva, the Desses ignore the fact that they also agreed to hold Sirva harmless from any claim regarding the conditions of the property, leaving the Desses as the responsible party.

After reviewing the disclosure statements, it is readily apparent that the disclosure statements were incorporated into the contract for two specific purposes: (1) to inform the Kincaids of the condition of the house, and (2) to place liability for the condition of

the house on the Desses. Thus, because the disclosure statements were incorporated by reference, they became a part of the contract between Sirva and the Kincaids and provide the required privity between the Kincaids and the Desses.

In summary, privity was established because the Kincaids were intended third-party beneficiaries and because the disclosure statements were incorporated by reference into the contract between Sirva and the Kincaids.

*Did the trial court err in granting summary judgment on the Kincaids' fraud and negligent misrepresentation claim?*

In granting the Desses motion for summary judgment, the trial court ruled that the Kincaids failed to establish reasonable reliance which is an essential element of fraud and negligent misrepresentation. The trial court stated:

"Reasonable reliance is essential for negligent misrepresentation as well as fraud; movants [the Desses] have pointed out the absence of evidence of any reliance and non-movants [the Kincaids] have not come forward with any facts to support the claim. Therefore, the claims of fraud and negligent misrepresentation fail."

Based on the trial court's ruling, it seems that the trial court wanted the Kincaids to provide a separate document containing the seller's disclosures relied upon by the Kincaids to prove reliance. This argument was rejected in *Osterhaus v. Toth*, 291 Kan. 759, 249 P.3d 888 (2011). In *Osterhaus*, our Supreme Court held that it was error to require a separate writing to prove reliance because the separate writing would essentially make the disclosure statement have no legal effect. 291 Kan. at 777-79.

In addition to not having a separate writing to show reliance, the Desses argue that the Kincaids cannot show reasonable reliance because they specifically affirmed that they were not relying on any representations when they signed the disclosure statements and the rider sales agreement. The Desses maintain that the Kincaids represented in their contract that they were relying solely on their own opinions and inspections and that this representation negates any alleged reliance on the Desses' disclosure statement.

The rider sales agreement contains a "Buyer Beware Clause" which states:

"Sirva makes no representations or warranties of any sort whatsoever regarding the property, its condition, value or surrounds and may not be held liable or responsible for any damages or liability to buyer or any other person or entity. Buyer is agreeing to fully rely on its right to inspections, tests and surveys granted herein to discover any undesirable or latent conditions regarding this property, and acknowledges that Sirva has made no representations thereon upon which Buyer may rely. The provisions herein shall survive closing and delivery of the deed. The closing of this transaction shall constitute Buyer's full and complete acceptance and release of claims for all conditions and inspection matters herein."

The Desses maintain that the Kincaids knowingly waived their rights to rely on any representations when they signed the rider sales agreement.

In arguing that the Kincaids failed to show reasonable reliance, the Desses present the same arguments that were rejected by our Supreme Court in *Osterhaus*. In *Osterhaus*, the purchasers of a house sued the seller after discovering defects that were not disclosed by the seller. The seller moved for summary judgment arguing that the buyer could not show reasonable reliance because the buyer had waived its right to rely upon the seller's representations by signing the buyer's acknowledgement. Our Supreme Court rejected that argument and held that a contractual waiver does not bar breach of contract or fraudulent misrepresentation claims as a matter of law where a buyer's reasonable inspection before purchasing the house did not reveal a seller's false representations and later defects are discovered.

Therefore, based on *Osterhaus*, the trial court erred in holding that the Kincaids could not show reasonable reliance. As a result, we reverse the trial court's grant of summary judgment to the Desses on the Kincaids' claims for fraud and negligent misrepresentation which were based on the rationale that the reliance element could not be met as a matter of law due to the Kincaids' signature on the rider sales agreement.

Next, we must determine whether the Desses' alleged misrepresentations or their alleged failure to disclose the defects could

have been reasonably relied on by the Kincaids, or whether a reasonable inspection would have revealed the defects complained of.

In this case, the Kincaids had an inspection done on the house but did not discover the defects until a month after closing. The Kincaids maintain that numerous items were not disclosed by the Desses or were concealed by them and their realtor. The Kincaids discovered the following defects: (1) that the exterior of the home was EIFS; (2) that the property had prior water damage; (3) that some of the exterior and interior walls had dampness problems; (4) that many windows were defective and rotten; and (5) that the home was contaminated with mold.

Because the trial court granted summary judgment on this issue, we cannot conclude from the record whether a reasonable inspection would have revealed the defects about which the Kincaids complain. Moreover, our court has previously held that the reasonableness of an inspection was a question of fact. See *Brennan v. Kunzle*, 37 Kan. App. 2d 365, 386, 154 P.3d 1094 (2007) ("The determination of whether the defects were discoverable through a reasonable inspection was a function of the trier of fact."). Thus, we reject the Desses' arguments that, as a matter of law, the Kincaids could not have relied on the Desses' representations because the Kincaids were relying on their own inspections. We determine that summary judgment was improperly granted in favor of the Desses.

*The "as is" and release provisions in the contract do not bar the Kincaids' claim for breach of contract and fraud and negligent misrepresentation.*

Next, the Desses argue that they are entitled to summary judgment because the amendment titled "Resolution of Unacceptable Conditions" contains an "as is" provision. Specifically, paragraph 1 of the amendment states that "Buyer now agrees to accept the Property 'as is' without correction of, or other action by the Seller." Paragraph 3 also states in relevant part that "Seller and Licensees assisting in the sale of the Property are released from any further obligation or liability related to the condition of the Property."

This exact argument was made in *Osterhaus*. The amendment in *Osterhaus* contained similar language to the amendment in this case. In rejecting this argument, the *Osterhaus* court held that the "as is" clause must be read in context. 291 Kan. at 786. Our Supreme Court noted that the amendment clearly dealt with the issue of unacceptable conditions revealed by the buyer's inspection and that it did not extend to defects that were for some reason not discovered during the inspection. Therefore, this "as is" language did not extend to the defects that were not discovered during the Kincaids' inspection and does not preclude the Kincaids' claim for fraud and negligent misrepresentation.

*Did the trial court err in granting summary judgment on the Kincaids' civil conspiracy claim?*

Next, the trial court also granted summary judgment on the Kincaids' civil conspiracy claim based on a lack of evidence of a meeting of the minds. The Kincaids argue that the evidence was sufficient to support a civil conspiracy claim that the Desses, along with their realtor Tricia Wolfe, conspired to defraud the Kincaids by omitting known defects in the house in order to finalize the sale of the house.

Our Supreme Court has held that civil conspiracy is an actionable tort in Kansas. *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678 P.2d 153 (1984). The elements of a civil conspiracy are:

" '(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.' [Citation omitted.] Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy." 234 Kan. at 967.

The Kincaids assert that the independent wrong giving rise to the cause of action is the Desses' decision to defraud them. In response, the Desses maintain that the trial court properly granted them summary judgment on this issue because the Kincaids failed to establish the underlying unlawful act of fraud. Nevertheless, we have reversed the grant of summary judgment on the fraud and negligent misrepresentation claim and remanded the issue to the trial court. Therefore, the Kincaids' civil conspiracy claim does not

fail simply because they could not establish the underlying crime of fraud.

In addition to proving the underlying crime of fraud, the Kincaids also must show a meeting of the minds to prove civil conspiracy. The Kincaids argue that "Wolfe and the Dess Defendants knew of the problems, had a financial interest in selling the property for as much as possible, and knowingly sold the property without disclosing the defects." The problem with this argument, however, is that the record does not contain evidence that there was ever an agreement or meeting of the minds between the Desses and Wolfe to defraud the Kincaids. A party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial. *U.S.D. No. 232 v. CWD Investments*, 288 Kan. 536, 559, 205 P.3d 1245 (2009). Mere speculation is similarly insufficient to avoid summary judgment. *Unified Gov't of Wyandotte County v. Trans World Transp. Svcs.*, 43 Kan. App. 2d 487, 490, 227 P.3d 992 (2010). Moreover, as the trial court correctly stated, anyone who sells a house has a financial interest in selling the property for as much as possible, so that is not evidence of a conspiracy. As a result, the trial court properly granted summary judgment to the Desses on the Kincaids' civil conspiracy claim.

*Did the trial court err in granting summary judgment on the Kincaids' rescission claim?*

Finally, the Kincaids argue that the trial court erred in granting summary judgment to the Desses on their rescission claim based on a lack of privity and a lack of reliance. As explained earlier, there was privity between the Kincaids and the Desses and the Kincaids did not need to provide any additional documents to prove that they relied on the Desses' disclosure statement. Thus, the trial court's reasoning for granting summary judgment was incorrect. We also reject the Desses' contention that the Kincaids cannot maintain an action for rescission because they cannot prove fraud. Again, as explained earlier, the trial court improperly granted summary judgment on the Kincaids' fraud and negligent misrepresentation claim.

In *Dreiling v. Home State Life Ins. Co.*, 213 Kan. 137, 147, 515 P.2d 757 (1973), our Supreme Court defined rescission as follows:

"Rescission of a contract is the annulling or abrogation or unmaking of the contract and the placing of the parties to it in status quo. It necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. (Black's Law Dictionary 4th Ed. p. 1472.) It is said to be the unmaking or an undoing of the contract from the beginning, and not merely a termination. [Citation omitted.] Rescission is described in *Cleaves v. Thompson*, 122 Kan. 43, 46, 251 P. 429, as follows:

'Rescission is an equitable remedy designed to afford relief from contracts entered into through mistake, fraud, or duress. Ordinarily, the nature of relief asked in such cases must be such as to place the parties in their original situation. . . .' "

In their brief, the Kincaids rely on the rule stated in *Sharp Electronics Corp. v. Lodgistix, Inc.*, 772 F. Supp. 540, 546 (D. Kan. 1991), which stated "unilateral rescission is generally available . . . as an equitable remedy to the victim of fraud who *ceases to accept the benefits* of the contract and *promptly* gives notice to the other party." (Emphasis added.)

Here, the Kincaids maintained possession of the property after discovering the defects in the home rather than rescinding the contract. The Kincaids began repairing the defects long before they filed suit against the Desses where they sought damages. Further, the Kincaids' failed to give the Desses prompt notice of their intent to rescind the contract. Thus, the Kincaids claim for rescission fails. See *Morse v. Kogle*, 162 Kan. 558, 560, 178 P.2d 275 (1947) (one who seeks to rescind a contract on the grounds of fraud must do so with reasonable promptness after discovery of the fraud). As a result, the trial court properly granted summary judgment in favor of the Desses on the Kincaids' rescission claim. See *Hockett v. The Trees Oil Co.*, 292 Kan. 213, 218, 251 P.3d 65 (2011) (If a trial court reaches the correct result, its decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision.).

Affirmed in part, reversed in part, and remanded for trial.